Susan CHAMBERS, Plaintiff,

v.

KALEIDOSCOPE, INC. PROFIT SHAR-
ING PLAN AND TRUST; Kaleidoscope,
Inc. Money Purchase Plan and Trust;
ERISA Administrators, Inc. as Profes-
sional Plan Administrator of both the
above Plans; Susan L. Edmondson,
personally and as Trustee and Adminis-
trator for both the above Trusts; and
Kawyn L. Zilm, personally and as
Trustee and Administrator for both the
above Trusts, Defendants.

Civ. A. No. C80–609A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 26, 1986.

Robert E. McCormack, Atlanta, Ga., for plaintiff.

Robert A. Bartlett, Fred F. Manget, Samuel Appel, Atlanta, Ga., Frank G. Smith, Austell, Ga., for defendants.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This is an action to recover pension benefits from employee pension and profit sharing plans and damages for alleged breaches of fiduciary duty by the plan trustees and administrators. This matter is before the court on the motion of plaintiff, Susan Chambers, for summary judgment on counts one through six of her complaint, defendant ERISA Administrators, Inc.'s ("EAI") cross-motion for summary judgment, and plaintiff's motion to reopen discovery. Each motion will be addressed in this order.

BACKGROUND OF CASE

Because of the long and tortuous history of this litigation, a brief discussion of the

factual and procedural history is necessary. Kaleidoscope, Inc. ("the company"), an Atlanta-based mail order business, hired plaintiff in March 1975. Soon thereafter, the company established pension and profit sharing plans for its qualified employees. The company made contributions to each plan, but then began experiencing financial difficulties. Defendant Susan Edmondson, the company's president, resigned her position in January 1979. An involuntary bankruptcy petition was filed on February 1, and the company followed with a voluntary petition several days later. Plaintiff was terminated in August 1979.

Plaintiff then instigated her efforts to recover her account benefits in the pension and profit sharing plans. She first filed a proof of claim in the bankruptcy proceeding. After defendant Edmondson rejected her request for plan records and benefit distribution, Chambers filed this action against both plans and three alleged trustees and administrators.[1] She sought relief under the Employee Retirement Income Security Act ("ERISA") for breach of fiduciary duty, failure to supply certain reports and documents on demand, and failure to distribute benefits. Plaintiff also alleged common law claims for compensatory and punitive damages for conversion and conspiracy, and requested termination of the plans and an accounting.

From the beginning, this litigation was complicated by the bankruptcy trustee's seizure of plan assets and his efforts to void company contributions to the plans as fraudulent transfers under the 1898 Bankruptcy Act. The trustee also sought to have this case resolved in the bankruptcy court and to join all former plan participants. In addition, the parties disagreed on the scope of this court's jurisdiction under ERISA and the Bankruptcy Act. This court concluded it had jurisdiction to hear plaintiff's claims; however, after a conference in chambers with the parties, the court stayed this action until the company's bankruptcy proceeding was completed. Ultimately, the bankruptcy court surrendered jurisdiction over the plan assets and this action was reinstated. The bankruptcy trustee was dismissed after he deposited all plan assets in his possession with the court and returned the plan records to defendant Edmondson.

Plaintiff now seeks summary judgment awarding her the following relief: (1) statutory damages of $100 per day from all defendants for failure to provide documents as requested (Counts 1-3 of the complaint); (2) lump sum distribution of her benefits, which she contends should be the entire assets of both plans (Count 4); (3) compensatory and punitive damages against all defendants for alleged breaches of their fiduciary duties under ERISA (Counts 5-6); and (4) all attorneys fees and costs incurred in this action. Plaintiff expressly states in her motion that she is not seeking resolution of counts 7-10, which include the claims for conversion, conspiracy, plan termination, and an accounting. She also has moved to reopen discovery for four (4) months after entry of the court's order. Defendant EAI has filed a cross-motion for summary judgment against plaintiff on all claims asserted against it.

FINDINGS OF FACT

After a careful review of the record, the court finds the following material facts are not in dispute:

(1) Plaintiff became an employee of Kaleidoscope, Inc. on March 6, 1975. Defendant Edmondson was the company's president at that time.

(2) The company instituted the Kaleidoscope, Inc. Money Purchase Pension Plan and Trust and the Kaleidoscope, Inc. Profit Sharing Plan and Trust (the "plans"), both of which became effective on July 1, 1975 (the "effective date").

(3) The plan agreements provide that the fiscal year ends on June 30 of each year.

---

1. At various times during this litigation, the bankruptcy trustee and a former plan trustee were included as defendants. Both have been dismissed from the case, and their status is not relevant to the pending motions.

(4) The "anniversary date" for each plan is defined as the first day of each plan year following the effective date.

(5) The "entry date" for each plan is defined as either the anniversary date or the first day of the seventh month following the anniversary date.

(6) A "year of service" is defined under each plan as a period of twelve consecutive months during which an employee has at least 1000 hours of service with the company.

(7) An employee becomes a "participant" in each plan on the entry date coincident with or next following the date on which he or she completes one year of service.

(8) Both plans provide that a participant achieves a vested interest of forty percent in his or her employer contribution account after four years of service subsequent to the date on which the company adopted the plan.

(9) Both plans provide for employer contributions based on a percentage of the employee's compensation. Employer contributions to the money purchase pension plan are mandatory, but contributions to the profit sharing plan are to be made at the discretion of the company's board of directors. Contributions under both plans are to be paid on or before the due date for the company's federal tax return for the fiscal year in which the contribution is to be made.

(10) Plaintiff received a summary plan description for the profit sharing plan and an annual report for both plans dated June 30, 1977. The annual reports listed Susan Edmondson and Kawyn Zilm as the trustees and administrators for each plan. The annual reports provided the following financial information:

| | Company contributions for fiscal year ended 6/30/77 | Total assets as of 6/30/77 |
| --- | --- | --- |
| Profit sharing plan | $34,451.32 | $61,151.67 |
| Money purchase pension plan | 22,967.55 | 40,767.79 |

(11) The federal income tax returns filed by the plans for fiscal year 1976–77 listed the employer contributions as the same amounts listed in the annual reports. The returns also stated that each plan had 12 participating employees.

(12) In its financial statements and federal tax return for the fiscal year ending June 30, 1977, Kaleidoscope, Inc. stated that it made contributions to the pension and profit sharing plans totalling $58,800.

(13) Plaintiff was never notified that any portion of these contributions had not been made, or that Edmondson and Zilm were no longer the plan administrators and trustees.

(14) EAI was hired by the company in July 1977 to prepare 1976 and 1977 plan annual reports and calculate the portion of company contributions attributable to each participant's account.

(15) The summary description of the profit sharing plan distributed to plaintiff listed EAI as the "professional plan administrator ... hired to assist with the administration of the Plan." The summary further stated that the plan administrative committee and the professional plan administrator "will decide all questions which come up under the Plan based on their interpretation of the Plan and Trust Agreement."

(16) EAI prepared the 1976 and 1977 annual reports for both plans and delivered them to the company.

(17) On several occasions, EAI made telephone and written contact with company representatives in an attempt to obtain the financial information needed to prepare the 1978 reports, but the company never provided the information. EAI had no further contact with the company or the plans after that time.

(18) Neither plan has received an employer contribution since the fiscal year that ended on June 30, 1977, nor has either plan filed a federal tax return or released an annual report since that time.

(19) Susan Edmondson resigned as president of the company in January 1979.

(20) The company's creditors filed an involuntary bankruptcy petition on February 1, 1979, and the company filed a voluntary Chapter 11 petition on February 5. The case was converted to a Chapter 10 reorganization under the 1898 Bankruptcy Act on September 14, 1979.

(21) Kawyn Zilm was terminated from the company in March 1979.

(22) Plaintiff was terminated on August 31, 1979.

(23) Plaintiff, through counsel, sent a letter dated February 27, 1980 by certified mail, return receipt requested, to Susan Edmondson in her capacity as trustee and plan administrator. In the letter, Chambers demanded certain documents and information as provided in 26 U.S.C. § 6057(a)(2) and 29 U.S.C. §§ 1021(a)(1), 1022(a), 1024(b), 1059(a)(1), and also demanded payment of her nonforfeitable accrued benefits.

(24) Edmondson, through counsel, responded to plaintiff by a letter dated March 25, 1980 in which she denied ever having been the plan administrator and suggested Chambers direct her inquiry to Kaleidoscope, Inc.

(25) Plaintiff has not received distribution of any benefits from either plan, nor has she received the information requested in her February 1980 letter.

(26) After the company went into bankruptcy, the bankruptcy trustee seized part or all of the assets and bank records of both plans. Pursuant to this court's order of February 12, 1985, the trustee deposited the plan assets in his possession into the registry of the court on September 10, 1985. As of July 17, 1986, this fund totalled $81,607.42. By the same order, the court directed the trustee to return all plan records to Edmondson.

(27) The bankruptcy trustee filed his plan of reorganization for the company in the bankruptcy court on January 16, 1984, and the plan was confirmed by the bankruptcy court's order dated February 16, 1984. The bankruptcy court entered an order in aid of confirmation on December 20, 1984, in which it directed the trustee to distribute cash payments to creditors as provided in the plan and sell or abandon the remaining corporate assets, and discharged the debtor. This order expressly recognized that the company's "corporate shell" had little or no value at that point.

(28) Both plans provide that vested benefits due to terminated employees are payable on the valuation date coincident with or following the close of the plan year in which the employee terminates. The "valuation date" is defined as the last day of the plan year or any other time the trustees value the assets held by the trust funds. Subject to the plan administrator's approval, participants may elect to receive lump-sum distribution of their benefits.

(29) Both plans also provide that, upon termination of the plan, each participant becomes fully vested of the "entire amount standing to his credit in his [plan] Account." The plan agreements state that plan termination may occur when, *inter alia*, the company permanently discontinues its plan contributions pursuant to a resolution of the board of directors, or when the board's temporary suspension of contributions continues uninterrupted for two years for reasons other than a lack of net income. When such a termination occurs, the trustee may distribute benefits after receiving direction from the board.

## CONCLUSIONS OF LAW AND DISCUSSION

### 1. *Plaintiff's Standing to Assert Her Claims*

At the outset, the court must determine whether plaintiff is entitled to assert claims for statutory violations and breaches of fiduciary duty under ERISA. The court's jurisdiction is premised on 29 U.S.C. § 1132, which allows civil actions by a plan participant or beneficiary. Defendants have contended Chambers is not entitled to assert those claims because she is not a current participant and is not a "beneficiary" as defined in 29 U.S.C. § 1002(8) because she is not vested as to any portion of her plan accounts.

A "participant" is defined under ERISA as a present *or* former employee "who is or may become eligible to receive a benefit" from an employee benefit plan. 29 U.S.C. § 1002(7). Similarly, a "beneficiary" is defined as a person "who is or may become entitled to a benefit" under such a plan. 29 U.S.C. § 1002(8). The law in this circuit provides that a former employee who terminates prior to becoming vested to some portion of his or her plan account is not a "participant" who "may become eligible to receive a benefit" and thus has no standing to bring a claim under section 1132. *Nugent v. Jesuit High School,* 625 F.2d 1285 (5th Cir.1980). Thus, plaintiff's right to bring this action rests on the court's determination regarding the vesting of her plan accounts.

The plans provide for forty percent vesting after the completion of four years of service following the date the company "adopted the plan[s]." The term "adoption date" is not defined in either plan or in Title 29. Defendants contend that the adoption date is June 29, 1976, the date the agreements setting up the plans were executed by the company and the plan trustees. Plaintiff contends the "effective date" of the plans, July 1, 1975, should be considered the adoption date. Under plaintiff's interpretation, she became forty percent vested on June 30, 1979, four years after the effective date.

The court concludes plaintiff's analysis is correct. Although dated one year later, the plan agreements clearly provide that the pension and profit sharing plans and trusts were "establish[ed]" as of the "effective date." Under the minimum vesting standards of ERISA, all of an employee's years of service with the employer since the plan was maintained must be calculated for the purpose of determining the employee's nonforfeitable percentage. 29 U.S.C. § 1053(b)(1). The plans define a "year of service" as any twelve-month period in which the employee had 1000 hours of service. If June 29, 1976 is considered the adoption date, Chambers' first year of service under the plan, July 1, 1975–June 30,

1976, could not be counted, which would be a violation of section 1053. The court declines to construe the plans in a manner that would result in disqualification of the plans under ERISA.

Moreover, the summary plan description distributed to Chambers provides that all service after July 1, 1975 is counted for the purpose of calculating an employee's vested interest in the plan. The Eleventh Circuit has held that any inconsistencies between the plan summary and the plan documents that inure to the employer's benefit should be resolved in favor of the plan summary. *McKnight v. Southern Life & Health Insurance Co.,* 758 F.2d 1566, 1570–71 (11th Cir.1985). Accordingly, the court finds that both plans were adopted on July 1, 1975, and that plaintiff became partially vested on June 30, 1979, two months before she was terminated. Therefore, she has standing as a plan "participant" to bring this action under 29 U.S.C. § 1132.

### 2. *Failure to Provide Documents Upon Demand*

#### a. *ERISA Requirements*

In the first three counts of her complaint, Chambers asserts claims for statutory damages of $100 per day pursuant to 29 U.S.C. § 1132(c) for defendants' failure to supply the information requested in her letter of February 27, 1980 to defendant Edmondson. In that letter, plaintiff requested the following information for both plans: (1) most recent summary plan descriptions; (2) statement of assets and liabilities; (3) statement of receipts and disbursements for the preceding twelve-month period; (4) latest plan and trust agreements and annual reports; (5) individual account statement regarding her deferred vested benefit; (6) report of her status in the plans as of her termination; and (7) the amount of her accrued and nonforfeitable benefits.

Plan administrators are *required* to furnish items (1), (2), (3), and (5)–(7) to participants within the time prescribed by law for each report. *See* 26 U.S.C. § 6057(a)(1), (e)

(individual statement of deferred vested benefits due to terminated employee); 29 U.S.C. §§ 1022(a) and 1024(b) (summary plan description); *id.* §§ 1023(b)(3), 1024(b)(3) (statements of assets and liabilities, receipts and disbursements). In addition, the plan administrator must provide item (4), the plan agreements and annual reports, upon request. 29 U.S.C. § 1024(b)(4).

Section 1132(c) of Title 29 provides as follows:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

There is no dispute that Chambers did not receive any of the information she requested. Therefore, the plan administrators may be found liable to plaintiff.

b. *Liability of Edmondson*

The "plan administrator" for each plan is defined as the two-person administrative committee appointed by the company board of directors. The summary plan description distributed to plaintiff listed defendants Edmondson and Zilm as the administrative committee members. In her initial response to plaintiff's February 1980 demand for information, defendant Edmondson denied that she was or ever had been the plan administrator for either plan. Since this action was filed, she apparently has reconsidered that position. In her response to plaintiff's interrogatories, Edmondson admitted that she was present-

ly a member of the administrative committee of both plans. However, Edmondson now contends she should not be held liable for failure to supply the requested information to plaintiff because (1) the bankruptcy trustee's seizure of plan records and assets effectively precluded Edmondson from providing the requested information; (2) plaintiff could have gotten the information from the bankruptcy trustee; (3) plaintiff has not shown injury from the failure to supply the information; and (4) plaintiff could have obtained the information through discovery.

Recovery under section 1132(c) is left to the district court's discretion. The cases Edmondson cites for her contention that Chambers must show actual injury or prejudice as a prerequisite to recovery under section 1132(c) do not stand for that proposition. The court, however, has found one case in this circuit in which this approach was followed. In *Paris v. Profit Sharing Plan,* 637 F.2d 357 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981), the former Fifth Circuit concluded the district court did not abuse its discretion in denying damages claimed under section 1132(c) because the plaintiffs had not attempted to demonstrate any prejudice by the trustee's failure to respond to their request for information. *Id.* at 362.

█ In the instant case, plaintiff has advanced a convincing argument that she was prejudiced by the failure to supply information upon request. Chambers was terminated from her position with the company almost seven years ago, but has yet to learn the amount of assets and liabilities of the plans, the sum of her accrued benefits, or whether the trust assets have been protected from misappropriation. All such information was outside plaintiff's reach or control absent cooperation from the plan administrators. Thus, to the extent that injury must be shown as a prerequisite to recovery under section 1132(c), the court finds Chambers has met that burden.

Edmondson's argument that she could not provide the requested information because the bankruptcy trustee seized the

plan records could fall within the "lack of control" exception in section 1132. However, Edmondson never invoked this excuse until she was faced with this summary judgment motion. The trustee had seized the records by the time Edmondson responded to Chambers' 1980 request for information. But in her response, Edmondson did not explain that she no longer had access to the records; instead, she denied she had ever been the plan administrator, a position she now concedes was "technically misleading." Edmondson points out that she filed a lawsuit against the trustee in district court that was dismissed because the bankruptcy court had asserted jurisdiction over the plan assets. However, she does not indicate that she sought to recover the records in the bankruptcy court after that decision, or that she asked the trustee to provide the requested information either to her or to Chambers.

Furthermore, the court is not convinced that the bankruptcy trustee seized all the records sought by plaintiff. In a pleading filed in this action on September 22, 1980, the bankruptcy trustee included an affidavit in which he indicated he recently had discovered that he inadvertently had received some of the plan bank account records and funds when he took possession of the debtor's assets. There is no indication he had control over the plan summaries, annual reports, tax registrations, or financial statements. Moreover, he stated that the bank account list was turned over to him voluntarily by defendant Zilm. Edmondson's counsel wrote a letter to the trustee's counsel in May 1980 in which she discussed deposits made to the plan accounts at some length. Surely she could not have provided this information unless she had access to some or all of the documents sought by plaintiff. Finally, the trustee returned all records to Edmondson pursuant to this court's order of February 13, 1985, but she still has not supplied the requested information to Chambers.

 Edmondson's arguments that plaintiff could obtain the information from the bankruptcy trustee or through discovery beg the question of whether Edmondson is liable for failure to produce them on demand. The bankruptcy trustee was not obligated to supply this information to plaintiff. Indeed, the record indicates that plaintiff did make such a request, but the trustee correctly responded that he was not a plan trustee or administrator. ERISA does not require plan participants to pursue third parties or engage in litigation to recover documents to which they are entitled by law. In addition, as discussed in part 4.b *infra*, the primary reason for Edmondson's failure to supply the requested records was that the statutorily required records were never prepared after plan year 1977. Accordingly, the court finds defendant Edmondson has no defense to plaintiff's claim for statutory damages for failure to supply required information upon demand.

### c. *Liability of Zilm and EAI*

In her complaint, plaintiff asserted her claims for statutory damages for failure to supply requested information only against defendant Edmondson. In her summary judgment motion, however, Chambers seeks relief on these claims from all three defendants on the grounds that Zilm and EAI are liable as cofiduciaries under 29 U.S.C. § 1105(a) and both received actual notice of her request when they were served with her complaint. Neither defendant has denied liability on the basis that they were not included in these claims originally. Instead, Zilm and EAI contend they are not liable because they were not plan fiduciaries, they never received a demand for plan records from Chambers, and they had no control over or access to the records plaintiff requested. Accordingly, the court will consider plaintiff's complaint as amended to assert Counts 1–3 against Zilm and EAI. Fed.R.Civ.P. 15(b).

Zilm contends that his role as a plan administrator and trustee terminated either when he resigned his position as vice president of the company (September 25, 1978), when the involuntary bankruptcy was filed (February 1, 1979), or when he was termi-

nated as a company employee (March 1979). Both plan agreements provide that a plan administrator may resign the position by delivering a written resignation to the employer. Similarly, under the terms of the plan agreements, a trustee may resign upon giving thirty days written notice to the company and providing a written statement of account with regard to the portion of the plan year for which he or she served as trustee. Defendant Zilm does not content that he followed any of these requirements, and there is no evidence in the record that he complied with the prerequisites for resignation.

■ At least two courts which have considered employee benefit plan fiduciaries' claims that their positions as trustees had ended have held that a plan trustee's obligations are extinguished only when he or she resigns in accordance with the applicable plan provisions *and* makes arrangements—e.g., through appointment of a successor—for the continued management of the plan. *Pension Benefit Guaranty Corp. v. Greene*, 570 F.Supp. 1483 (W.D. Pa.1983), *aff'd mem.*, 727 F.2d 1100 (3rd Cir.), *cert. den.*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629 (W.D.Wis. 1979). These courts reasoned that the very purpose of imposing a fiduciary duty upon plan trustees and administrators is defeated if a fiduciary may abandon his or her duties in derogation of plan requirements and without ensuring that the fiduciary obligations will be met. *Greene*, 570 F.Supp. at 1497–98; *Freund*, 485 F.Supp. at 635; *see* 29 U.S.C. § 1104(a)(1)(B) (imposes prudent man requirement upon plan fiduciaries).

This court agrees with the analysis employed by the Pennsylvania and Wisconsin courts. There is no question that Edmondson and Zilm, as plan administrators, trustees, and "named fiduciaries" under the plan agreements, were obligated to follow the standards and requirements ERISA imposes on employee benefit plan fiduciaries. 29 U.S.C. §§ 1002(16)(A), 1002(21)(A), 1102(a), 1103(a), 1104. A plan

trustee or administrator who abandons his or her duties without notice to the cofiduciaries, the employer, or the plan beneficiaries and in derogation of the plan requirements, and who takes no action to provide for continued management of the plan has not acted with the "care, skill, prudence, and diligence … that a prudent man acting in a like capacity and familiar with such matters" would employ. 29 U.S.C. § 1104(a)(1)(B), (D).

■ There is no evidence Zilm gave any notice of his intent to resign his positions or made any arrangements for further performance of his fiduciary duties. If Zilm's position is adopted, he would be able to avoid liability for other breaches of fiduciary duty by asserting as a defense this initial breach of duty by his failure to follow plan documents and ensure continued management of the plan. Such a result would violate the principle of imposing fiduciary duties upon plan administrators and trustees and would thwart the ERISA goal of protecting the interests of employee benefit plan participants. *See* 29 U.S.C. § 1001. Accordingly, the court finds defendant Zilm remained obligated as a plan administrator and trustee for the time relevant to this lawsuit.

■ Notwithstanding this conclusion, the court holds defendant Zilm is not liable for damages under section 1132(c) because he never received a request for information from plaintiff. There is no dispute that Chambers' request for information was directed only to defendant Edmondson. Nothing in the record indicates that Zilm had notice of plaintiff's request. Chambers argues he received notice through her complaint; however, the claims for damages under section 1132(c) were asserted against defendant Edmondson only. Moreover, unlike Edmondson, there is no indication that Zilm retained control over or access to the requested records at that time.

■ Nor is Zilm liable under section 1132(c) as a cofiduciary. Liability for such a breach of fiduciary duty is extended to a cofiduciary only if he knowingly partici-

pated in the breach or had knowledge of the other's breach and made no effort to remedy the breach. 29 U.S.C. § 1105(a); *see Monson v. Century Manufacturing Co.*, 739 F.2d 1293 (8th Cir.1984); *Davidson v. Cook*, 567 F.Supp. 225 (E.D.Va. 1983), *aff'd*, 734 F.2d 10 (4th Cir.), *cert. den.*, 469 U.S. 899, 105 S.Ct. 275, 83 L.Ed.2d 211 (1984). There is no evidence that either circumstance arose in this case. Accordingly, plaintiff's motion for summary judgment against defendant Zilm on Counts 1–3 of her complaint is DENIED.

■■■ Defendant EAI argues in its brief in opposition to plaintiff's motion and in support of its cross-motion for summary judgment that it cannot be found liable to plaintiff for any claim because it was not a fiduciary. The court need not decide this issue with regard to the claims for section 1132(c) damages because there is no dispute that Chambers never directed her request for information to EAI, and there is no evidence that EAI was ever on notice of her request or Edmondson's failure to comply. Furthermore, the evidence establishes that EAI received no plan or company records or information after it prepared the 1976 and 1977 reports. EAI had no access to company records unless they were provided by the plan administrators or other company representatives. Thus, there was no way EAI could have supplied the requested information even if it had been asked. EAI is entitled to summary judgment in its favor on this issue.

### d. *Amount of Damages to Be Awarded*

The language of section 1132(c) indicates that determination of the scope of relief to be awarded for a violation of section 1132(c) is solely within the court's discretion. The court may assess a penalty of up to $100 for each day the violation continued or "such other relief as it deems proper." 29 U.S.C. § 1132(c). Not surprisingly, plaintiff argues that the full statutory penalty should be awarded. She contends the penalty is needed to compensate her for the willful failure to file records required by

law or to supply them to her on request, and to deter others from similar conduct.

The court is aware of two reported cases in which all or part of the statutory amount was awarded. In *LeFebre v. Westinghouse Electric Corp.*, 549 F.Supp. 1021 (D.Md.1982), *rev'd on other grounds*, 747 F.2d 197 (4th Cir.1984), the district court awarded the plaintiff the full statutory amount of $100 per day from the thirty-first day after he made his request, for a total of $74,000. 549 F.Supp. at 1029. The court in *Porcellini v. Strassheim Printing Co.*, 578 F.Supp. 605, 614 (E.D.Pa.1983) awarded $25 per day rather than the full statutory amount because it found the three-month delay in providing the information was the result of neglect or indifference rather than willful behavior by the plan administrator.

■■■ The court agrees with Chambers that Edmondson's initial response to plaintiff's request for information was, at best, a material misrepresentation of Edmondson's present and former position as a plan administrator, and was contradicted by actions she took shortly thereafter. However, because of the protracted history of this action, an award for the full statutory amount would result in a judgment of over $200,000 for plaintiff. The court declines to award such a windfall. Accordingly, the court holds plaintiff is entitled to summary judgment against defendant Edmondson in the amount of $10 per day.

■■■ There is a question in the court's mind regarding the appropriate period of time during which these damages should accrue. Plaintiff has presented a strong argument that the entire period of time from March 30, 1980—the date by which defendant was required by the statute to supply the information—should be included. After a review of the record, the court concludes that a certain portion of time within that period should be excluded from the computation of damages because the case was stayed as a result of the court's actions, which were beyond the defendants' control.

Pursuant to the court's order, a status conference was held on February 11, 1982 during which the parties discussed with the court various proposals regarding procedure and scheduling for the case. Proposals subsequently were submitted to the court, and an order was entered staying the case pending disposition of certain matters in the Bankruptcy Court. That stay was lifted by this court's order of October 23, 1984.

Accordingly, the court concludes that the statutory damages shall run from March 30, 1980, but that the period from February 11, 1982 until October 23, 1984 shall be excluded from the computation. Said damages shall accrue as stated until this judgment is satisfied or until plaintiff receives all requested information, whichever first occurs.

### 3. *Claim for Distribution of Benefits*

In Count 4 of her complaint, plaintiff alleged she was entitled to a lump-sum distribution of her benefits under both plans pursuant to her request of February 27, 1980 and the provisions of both plan agreements. She now contends that *all* assets of both plans should be paid to her because she is the only partially vested participant and because the trust assets of qualified employee benefit plans cannot inure to the benefit of the employer. Plaintiff has not cited any authority for this novel proposition. Defendants argue that Chambers is not vested; alternatively, they contend that if plaintiff is vested, other former employees also are vested, and that plaintiff has not demonstrated entitlement to a specified amount.

The court already has concluded that Chambers was vested to forty percent of her accrued benefits as of June 30, 1979. Both plans provide that a terminated employee may receive distribution of vested benefits on the valuation date coincident with or following the close of the plan year

in which the participant terminated service with the employer. Thus, at a minimum, Chambers is entitled to distribution of forty percent of her accrued benefits in each plan as a matter of law.

However, if plaintiff only receives forty percent of her accrued benefits, the status of the remaining sixty percent remains unclear. Plaintiff correctly observes that, absent certain narrow exceptions, the assets of a plan must be held for the exclusive benefit of the participants and cannot inure to the employer's benefit. 29 U.S.C. § 1103(c)(1). Chambers contends she is the only partially vested participant. Thus, she reasons, all trust assets must be distributed to her to avoid reversion of the assets to the company in violation of section 1103.

Defendants Edmondson and Zilm dispute plaintiff's claim that only she is a vested participant. The evidence shows there were twelve plan participants. Although the record shows that Edmondson and Zilm terminated prior to June 30, 1979, Chambers has not shown that all other participants terminated prior to becoming partially vested. Consequently, the court finds that a material question of fact exists on this issue.

 Moreover, plaintiff's theory contradicts the provisions of the plan and ERISA. Both plans are "individual account plans" or "defined contribution plans" because both provide for an individual account for each participant with benefits based solely upon the amount contributed to each account. 29 U.S.C. § 1002(34).[2] Participants in defined contribution plans cannot receive distributions from any account other than their own under any circumstances. If plaintiff were to obtain distribution of all trust assets, she would be receiving the accrued benefits of other participants. Accordingly, the court finds plaintiff is not entitled to a distribution in excess of the benefits accrued in her accounts under both plans.

**2.** During the earlier phases of this litigation, plaintiff contended that the plans were defined contribution plans. In her summary judgment brief, however, Chambers took the position that

the plans were "defined benefit plans" as provided in 29 U.S.C. § 1002(35). The court finds plaintiff's first position was correct.

Nonetheless, this finding does not resolve the question of what percentage of her benefits should be distributed. No employer contributions have been made since 1977, and the company has been reduced to a "corporate shell." *See In re Kaleidoscope, Inc.,* No. 79–304A (Bankr.N.D.Ga. December 20, 1984) (slip op. at 2). The plan sponsor appears to have abandoned the plans, and the trustees have taken no action to distribute benefits. Thus, if plaintiff is not entitled to distribution of all her accrued benefits now, there exists no readily apparent way for her to obtain them at any future point. Since they cannot revert to the employer, her benefits could end up in legal limbo forever.

There is one circumstance under which Chambers could receive distribution of all benefits accrued in her plan accounts. Both plan agreements provide for 100 percent vesting of all participants upon termination of the plans. Thus, if the plans are determined to be terminated, all participants, including plaintiff, would be fully vested to their accrued benefits. All money in the trusts then would be allocable, and there would be no risk of reversion of trust assets to the employer.

In Count 10 of her complaint, plaintiff requested the court to order termination of the plans. Although she has not included this claim in her summary judgment motion, the court may grant summary judgment on this count if it finds there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law. *Broderick Wood Products Co. v. U.S.,* 195 F.2d 433 (10th Cir.1952); *Board of National Missions v. Smith,* 182 F.2d 362 (7th Cir.1950).

The court finds that there is no dispute regarding the facts material to the claim for plan termination, that the question of plan termination may be determined as a matter of law, and that this issue must be resolved before the court may determine what portion of the trust assets shall be distributed to plaintiff. Requiring plaintiff to raise this issue in a subsequent motion would waste the time and resources of the litigants and the court. *Wisnouse v. Telsey,* 367 F.Supp. 855, 857–58 (S.D.N.Y. 1973). Accordingly, the court will address the claim for plan termination on the merits.

In resolving this claim, the court is compelled to note the lack of controlling statutory or case authority governing the question of when and how defined contribution pension and profit sharing plans established by a now-defunct, bankrupt employer may be judicially decreed to have terminated, thereby entitling the participants to full vesting of their accrued benefits. Subchapter III of ERISA, 29 U.S.C. §§ 1301–1461, establishes a procedure for termination of certain plans covered by Pension Benefit Guarantee Corporation plan termination insurance, but defined contribution plans are expressly excluded from coverage of this subchapter. 29 U.S.C. § 1321(b)(1). There is no express statutory procedure for termination of defined contribution plans.

The court has found three cases in which a court, confronted with a bankrupt plan sponsor, either has recognized its power as a court of equity to terminate an employee benefit plan or has authorized distribution of all accrued benefits. *See Braniff-Airways, Inc. v. Interfirst Bank (In Re Braniff Airways, Inc.),* 33 B.R. 1 (Bankr.N.D. Tex.1983) (*held,* plan administrators entitled to petition court to set termination dates for plans); *Union Central Life Insurance Co. v. Hamilton Steel Products, Inc.,* 448 F.2d 501 (7th Cir.1971) (participants in pension plan funded by annuities with provision for full payment when annuity terminated *held* entitled to complete distribution after bankrupt employer ceased paying premiums); *Hauser v. Farwell, Ozmun, Kirk & Co.,* 299 F.Supp. 387 (D.Minn.1969) (once employer went out of business, participants entitled to full distribution under plan providing for 100 percent vesting after employer ceased contributions to plan). The courts in the pre-ERISA cases, *Hauser* and *Union Central,* based their decisions on plan or or annuity

policy provisions and did not reach the issue of the court's equitable power to terminate an employee benefit plan.

In the instant case, both the profit sharing and pension plan agreements provide that termination occurs when the company board of directors votes to discontinue contributions permanently or suspends contributions for two consecutive years for reasons other than lack of net income. There is no evidence the company's board of directors took such action. Although the company has made no contributions to either plan since 1977 and apparently has not conducted business since shortly after the bankruptcy case commenced, there is no evidence the company has taken any official action to terminate the plans. Thus, the court must look beyond the plan language to determine the status of the plans.

Another source of authority for rules governing plan termination is the Internal Revenue Code and the regulations and revenue rulings promulgated thereunder. To be qualified for tax purposes, a pension or profit sharing plan must meet certain funding, distribution, and vesting requirements set forth in subchapter D of the Code, 26 U.S.C. §§ 401–419A. As part of its implementation of this subchapter, the Treasury Department has issued certain regulations regarding plan terminations.

Use of the tax rulings, however, may not be permissible in this circuit. In *Craig v. Bemis Co.*, 517 F.2d 677 (5th Cir.1975), the former Fifth Circuit ruled that plan participants in a collectively-bargained plan could not base their claims for benefits on an argument that their termination prior to vesting of their pension benefits violated the Internal Revenue Code requirements for vesting upon partial plan termination. The plaintiffs in *Craig* predicated this argument on a paragraph in the plan agreement which stated that the plan was to be conducted as a tax-qualified plan. *Id.* at 685. The court rejected their argument, reasoning that the pre-ERISA plan agreement did "not make potential pensioners third-party beneficiaries of any understanding between the [employer] and the Commissioner." *Id.* at 686. Consequently, the court refused to apply the Treasury Department test for partial termination. *Id.* at 685–86.

This analysis has not been applied by the Eleventh Circuit or the former Fifth Circuit to a plan established after the enactment of ERISA. Certainly, it has not been applied under circumstances similar to those in the instant case. The employer in *Craig* was continuing to operate its business. The employees terminated as a consequence of one plant closing were attempting to incorporate the Treasury definition of partial termination into the plan agreement so that they could obtain distribution of the accrued benefits contributed by the employer to the plan as deferred compensation during their employment. There was no question that the employer was continuing to operate the plan for the benefit of current employees, and that the plan trustees and administrators were executing their legal and contractual responsibilities.

In the instant case, however, no plan sponsor or board of directors is available to declare termination of the plans or discontinuance of contributions. No plan trustee or administrator has made any effort to resolve the status of the plans or arrange for benefit distribution. Moreover, unlike the situation in *Craig*, in this case the Treasury Department definition of termination *has* been incorporated into the plan agreements. The circumstances constituting plan termination appear to have occurred, but the entity responsible for so declaring no longer exists. Thus, the court is not seeking to use the tax regulations to determine whether and under what circumstances a termination *can* occur; it only needs to decide *when* the termination becomes effective. Accordingly, the court determines it may follow the timing provisions of the tax regulations without violating the principles established in *Craig*.

Section 401(a)(7) of the Code, 26 U.S.C. § 401(a)(7), provides that a pension or profit sharing trust will not be qualified for tax purposes unless it satisfies the minimum vesting requirements of 26 U.S.C. § 411.

Subsection (d)(3) of Section 411 establishes a minimum vesting requirement for plan termination that must be included in a qualified plan:

[A] trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that—

(A) upon its termination or partial termination, or

(B) in the case of plan to which section 412 does not apply, upon complete discontinuance of contributions under the plan,

the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable.

29 U.S.C. § 411(d)(3).

This requirement is met for both plans at issue in this action.

The terms "termination" and "complete discontinuance of contributions" are not defined in the statute. Although the Treasury Department also has not defined the terms, its regulations do provide that a defined contribution plan is considered terminated on the date the employer voluntarily terminates the plan. Treas.Reg. § 1.411(d)–2(c)(3) (codified at 26 C.F.R. § 1.411(d)–2(c)(3) (1986)). A determination of whether a complete discontinuance of contributions to a profit sharing plan has occurred will be made "with regard to all the facts and circumstances" of the case. Treas.Reg. § 1.411(d)–2(d)(1). The following factors are to be considered:

(i) Whether the employer may merely be calling an actual discontinuance of contributions a suspension of such contributions in order to avoid the requirement of full vesting as in the case of a discontinuance, or for any other reason;

(ii) Whether contributions are recurring and substantial; and

(iii) Whether there is any reasonable probability that the lack of contributions will continue indefinitely.

Treas.Reg. § 1.411(d)–2(d)(1); *see* Rev.Rul. 80–277, 1980–2 C.B. 153.

When a complete discontinuance is determined to have occurred, the discontinuance becomes effective no later than the last day of the employer's taxable year following the last tax year in which a substantial contribution was made. Treas.Reg. § 1.411(d)–2(d)(2).

 In the instant case, the company has made no contributions to either plan since 1977. Given the current status of the company, the court finds there is a substantial probability that the lack of contributions will continue indefinitely. Accordingly, the court holds that the profit sharing plan terminated on June 30, 1978. All participants in the plan as of that date, including plaintiff, became 100 percent vested at that time. Plaintiff is entitled to receive distribution of all accrued benefits in her profit sharing plan plus interest at the legal rate from June 30, 1980, the date on which her benefits should have been distributed under the applicable plan provisions. *See PBGC v. Greene*, 570 F.Supp. at 1502–04 (awarded prejudgment interest on ERISA claim); *Pete v. UMW Welfare & Retirement Fund*, 517 F.2d 1275, 1288 (D.C.Cir.1975) (allowed retroactive payment of benefits plus interest).

 The money purchase pension plan requires a slightly different analysis. Because it is subject to the mandatory minimum funding requirements of 26 U.S.C. § 412, full vesting occurs when the plan is terminated by the employer, not when contributions are discontinued. Treas.Reg. § 1.411(d)–2(a)(1). However, as discussed previously, there is no realistic possibility the employer will "terminate" the plan.

The company's last contribution to the pension plan was in 1977. An employer who fails to comply with the mandatory funding requirements of section 412 is subject to a penalty assessed by the IRS. The record before the court does not indicate whether that tax has been levied against the company. To avoid a risk of forfeiture of some of the trust assets should the Service decide to assess the penalty for

1978 and subsequent years against the trust itself, the court will consider the pension plan terminated as of June 30, 1978. Plaintiff is entitled to distribution of her accrued benefits under the same terms as for the profit sharing plan.

### 4. *Breach of Fiduciary Duty*

#### a. *Scope of Duty*

Plaintiff seeks summary judgment on Counts 5 and 6 of her complaint, which alleged claims against defendants Edmondson and Zilm for failure to protect plan assets, distribute benefits, or act in the best interest of the participants, and against all defendants for failure to prepare and distribute the records and reports required by statute or to inform the participants of the status of the plans. Chambers seeks damages of $26,943.56 plus interest, the amount allegedly missing from the profit sharing plan, and punitive damages of $100,000.[3]

■■■ The court first must determine whether and to what extend these defendants owed a fiduciary duty of care, skill, prudence, and diligence to plaintiff. As discussed in section 2 *supra*, both Zilm and Edmondson were designated specifically in the plan documents as trustees, plan administrators, and "named fiduciaries." The very nature of those positions clearly imposes a fiduciary obligation upon the persons who occupy them. 29 U.S.C. §§ 1002(16), 1002(21), 1102(a), 1103(a), 1104, 1105; *Brandt v. Grounds*, 687 F.2d 895 (7th Cir.1982); *Freund*, 485 F.Supp. at 635; 29 C.F.R. § 2509.75–5, –8 (1985). Furthermore, the court also has found that these fiduciary duties did not end with the company's bankruptcy or with defendants' termination because they did not follow plan procedures for resignation from their positions and they failed to make arrangements for continued management of plan affairs. Accordingly, both Zilm and Edmondson are liable for any breach of fiduciary duty established by plaintiff through undisputed material facts.

Defendant EAI's liability as a fiduciary is less clear. EAI was neither a plan trustee nor a member of the administrative committee. Plaintiff contends EAI acted as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A) on the grounds that the plan agreements authorized the administrative committee to hire certain outside advisers, and that EAI was hired and given discretionary authority. In addition, plaintiff argues that the plan summary designation of EAI as the "professional plan administrator" should be interpreted in favor of the participants under *McKnight*, 758 F.2d at 1570.

EAI strongly contests plaintiff's characterization of its status. EAI contends that its activities were wholly ministerial in nature, and that it had no discretionary authority to manage the plans, invest the trust assets, or otherwise to perform in any way sufficient to create a fiduciary obligation. Furthermore, EAI argues, even if the court determines EAI to be a fiduciary, it cannot be held liable to plaintiff because its duties were discharged after 1977 once it was unable to obtain the necessary documents and financial information from the company.

A fiduciary relationship must be created either by the plan or under ERISA. *Brandt*, 687 F.2d at 897; *Justice v. Bankers Trust Co.*, 607 F.Supp. 527 (N.D.Ala. 1985). Plaintiff contends the plan agreements authorized the administrative committee to delegate certain fiduciary duties; however, plaintiff has offered no evidence to show that any such duties were so delegated to EAI. Plaintiff has shown only that EAI prepared certain reports and documents in 1976 and 1977 based upon information provided by the company. EAI's affidavit testimony, which demonstrates that EAI performed accounting and mathematical computations based upon pre-estab-

---

**3.** In her complaint, Chambers pleaded for punitive damages only in Counts 7 and 9, the conversion and conspiracy charges. Again, however, defendants have responded to this plea for relief on the merits. Therefore, the court will consider the complaint amended to include a request for punitive damages under Counts 5 and 6. Fed.R.Civ.P. 15(b).

lished formulas and requirements, is uncontroverted. Nothing in the record suggests that the plan administrators delegated any discretionary or decision-making authority to EAI.

█ Indeed, the only reference to EAI in the plan documents is the "professional plan administrator" designation in the profit sharing plan summary, along with the statement that the administrative committee and professional plan administrator "will decide all questions" which come up under the plan. The court declines to extend the holding in *McKnight* to these statements. First, unlike *McKnight*, this portion of the case does not involve a determination of the participants' rights to benefits under the plan. Second, there is no inconsistency between the plan summary and the plan agreements that would require the court to choose one interpretation over another. Third, the holding in *McKnight* was applied against the employer who drafted the plan agreements, not a third-party independent contractor. Fourth, Chambers does not claim that she relied upon these references in the plan summary to her detriment. Finally, even if the court were to construe the plan summary against EAI, the language plaintiff relies upon would not establish the existence of a fiduciary obligation as a matter of law. Accordingly, the court holds that the plan documents do not impose a fiduciary obligation on EAI.

█ Nonetheless, EAI may be held to the fiduciary standard of care if, under the circumstances of this case, a fiduciary duty is found to be imposed by any provision of ERISA. *See Brandt*, 687 F.2d at 897. EAI is not a plan administrator, trustee, or named fiduciary as defined in 29 U.S.C. §§ 1002(16), 1102(a), 1103(a). In its interpretive bulletins, the Department of Labor has established guidelines for determining when a person or entity who is not a named fiduciary or trustee may be found to be a fiduciary. The Department has stated that an accountant, actuary, or consultant who is not an investment adviser will not be considered a fiduciary unless the consul-

tant performs one or more of the following functions:

> (a) exercises discretionary authority or discretionary control respecting the management of the plan, (b) exercises authority or control respecting management or distribution of the plan's assets, (c) renders investment advice for a fee ... or (d) has any discretionary authority or discretionary responsibility in the administration of the plan.

ERISA Interpretive Bulletin 75–5, 29 C.F.R. § 2509.75–5(D–1) (1985). There is no evidence that EAI performed any of these activities. EAI's affidavit testimony shows that it performed accounting and record-keeping functions only, and plaintiff has not controverted that testimony.

Moreover, the Department of Labor also has ruled that persons or entities who perform the administrative functions done by EAI, such as calculating service credits and benefits, preparing government reports and employee communication material, and collecting and applying contributions, but who do not have discretionary authority to make decisions or policies regarding these activities are not fiduciaries. ERISA Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8(D–2) (1985). EAI clearly falls within this category. Accordingly, the court finds EAI was not a fiduciary of either plan during any time relevant to this lawsuit. Plaintiff's motion for summary judgment against EAI is DENIED, and EAI's motion for summary judgment is GRANTED.

### b. *Liability for Breach*

Plaintiff has outlined a number of acts or omissions that she contends constitute breaches of fiduciary duty by Edmondson and Zilm. Because there is no material factual dispute regarding these incidents, the court may make conclusions of law as to those defendants' liability.

█ The court finds defendants Edmondson and Zilm breached their fiduciary duties of care, skill, prudence, and diligence by the following acts and omissions:

(1) They never provided plaintiff with a summary plan description for the pension plan, and did not file the records and reports required by law for any plan year after 1977 in blatant violation of statutory requirements. *See* 29 U.S.C. §§ 1022(a), 1023(b), 1024(b); *see also LeFebre,* 549 F.Supp. at 1027–29.

(2) Edmondson and Zilm did not inform the participants of the deteriorating financial status of the company and the potential effect on their trust assets, or the the company had ceased contributing to the plans. Once the bankruptcy was filed and the company ceased operations, the trustees did not attempt to obtain termination of the plan or distribution of accrued benefits. *See* 29 U.S.C. § 1104(a); *see also Rosen v. Hotel & Restaurant Employees & Bartenders Union,* 637 F.2d 592 (3rd Cir.1981), *cert. den.,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1984); *Braniff,* 33 B.R. at 3. Although defendant Edmondson did file suit against the bankruptcy trustee, there is no evidence she pursued her claim in the bankruptcy court after the first action was dismissed.

(3) The trustees failed to protect the profit sharing plan assets or to ensure that the plan received the money contributed by the company. *See Central States Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

The plan annual report distributed to participants and the federal tax returns filed on behalf of the plan and the company all show that the company made a contribution of $34,451.32 to the profit sharing plan for the plan year ending June 30, 1977. The plan's bank account records, however, indicate that only $8507.76 was deposited into the profit sharing trust account.

■ Defendants argue that contributions to the profit sharing plan were discretionary, and that the company did not make a contribution to the plan because it had no net income in fiscal year 1977 out of which profit sharing distributions could be made. They are no doubt correct on both points, but those circumstances do not release the trustees from the breach of their fiduciary duties to protect trust assets, to collect contributions from the employer, and to inform participants of the true status of the plan assets.

The information provided to the participants clearly stated that the company's contribution to the profit sharing plan totalled $35,451.32. This statement was confirmed by the plan tax return attached to the annual report. Federal law provides that an employer may deduct from its income contributions paid into a profit-sharing plan in the taxable year for which they are paid. 26 U.S.C. § 404(a)(3). The company claimed a deduction for the full amount of the stated contribution in fiscal year 1977. If the full contribution was not made, the representations in the annual report and the income tax returns were materially misleading at best, and possibly fraudulent or even criminal. The participants clearly were entitled to rely on these representations unless they were given timely notice that the information was incorrect. There is no evidence the participants ever were notified that the company did not intend to deposit the entire $35,-451.32 in the trust account, or that the trustees made any effort to compel the company to deposit the full amount of the contribution. The evidence shows defendants either participated in the misrepresentation perpetrated by the company or failed to stop it. Therefore, defendants Edmondson and Zilm are liable to plaintiff for this serious breach of fiduciary duty. *See* 29 U.S.C. §§ 1104(a), 1105(a); *see also Monson v. Century Manufacturing Co.,* 739 F.2d 1293 (8th Cir.1984).

■ (4) Defendant Edmondson also breached her duty to process plaintiff's claim for benefits diligently and in good faith. *Russell v. Massachusetts Mutual Life Insurance Co.,* 722 F.2d 482 (9th Cir. 1983), *rev'd on other grounds sub nom.,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Not only did Edmondson fail to pay plaintiff's claim for benefits promptly, but she also denied even having the responsibility or authority to do so. Clearly, this total abdication of responsibility constitutes a

breach of defendant Edmondson's duties of care, diligence, and prudence.

■ (5) Finally, the court finds defendants Edmondson and Zilm breached their fiduciary duties of care, loyalty, and prudence by abandoning their roles as trustees and administrators without making adequate arrangements for continued management of the plans. *See PBGC v. Greene*, 570 F.Supp. at 1497–99; *Freund*, 485 F.Supp. at 635–36.

### c. *Damages*

■ Plaintiff has requested an award of compensatory damages in the amount of $26,943.56 plus prejudgment interest, which she requests be deposited into the profit sharing plan account. This sum represents the difference between the amount the participants were notified had been contributed to the profit sharing plan and the amount actually deposited into the trust bank account. The court finds this amount is causally related to the aforesaid breaches of fiduciary duty and is necessary to compensate plaintiff and any other participants for the loss occasioned by said acts and omissions. Moreover, Section 409(a) of ERISA specifically provides for such a breach of fiduciary duty. 29 U.S.C. § 1109(a). Accordingly, the court hold defendants Edmondson and Zilm are liable individually and in their official capacity for the amount of $26,943.56. All funds awarded on this claim shall be deposited in the profit sharing plan and trust.

■ Plaintiff also seeks an award of $100,000 in punitive damages on the claims for breach of fiduciary duty. Ordinarily, a claim for punitive damages is address to the jury; however, in this circuit ERISA cases are not tried to a jury. *Calamia v. Spivey*, 632 F.2d 1235 (5th Cir.1980); *Zittrouer v. Uarco Inc. Group Benefit Plan*, 582 F.Supp. 1471 (N.D.Ga.1984). Consequently, the court may address this issue on a summary judgment motion.

The United States Supreme Court recently ruled that plan beneficiaries do not have a right of action against plan fiduciaries for punitive damages. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Accordingly, plaintiff's motion for summary judgment awarding her punitive damages is DENIED and her claim for punitive damages is DISMISSED.

### 5. *Attorneys Fees*

The final portion of plaintiff's summary judgment motion is her request for attorneys fees pursuant to 29 U.S.C. § 1132(g). The standard for evaluating a plea for attorneys fees in an ERISA claim is set forth in *McKnight*, 758 F.2d at 1571–72. Upon reviewing the *McKnight* guidelines, the court has concluded that a decision on the attorneys fees claim prior to conclusion of this litigation would be premature. The court hereby DEFERS its ruling on the claim for attorneys fees until the conclusion of this action.

### 6. *Motion to Extend Discovery*

During the period this case was stayed, the parties were not permitted to conduct discovery. Plaintiff has moved the court to grant an additional four months for discovery if any part of her summary judgment motion is denied. Defendants oppose this motion on the ground that plaintiff has conducted no discovery since the case was ordered reopened in October 1984.

Plaintiff apparently was under the impression that, notwithstanding the court's order reinstating the case, no party was allowed to conduct discovery until a formal motion to reopen discovery was filed and granted. Although this order resolves most of plaintiff's claims, plaintiff will need to conduct some discovery to determine the dollar amount of her accrued benefits and possibly to discover additional information relative to her claim for attorneys fees. Accordingly, the court will extend discovery for sixty (60) days from the date of this order.

### 7. *Plaintiff's State Law Claims*

In Counts 7 and 9 of her complaint, Chambers alleged claims for conversion

and conspiracy to violate applicable ERISA statutes. She seeks actual and punitive damages in an unstated amount.

■ These claims are based in tort, which means they must be considered to be based on state law. The court has not found any provision of ERISA that provides for such claims. ERISA provides an exclusive remedy and clearly preempts state law claims. 29 U.S.C. § 1144; *Whitaker v. Texaco, Inc.,* 566 F.Supp. 745, 748–49 (N.D.Ga.1983). Arguably, Count 9 could be read broadly to stated a cause of action under ERISA. However, as plaintiff acknowledges in her brief, this claim is merely an alternative plea for the same relief that already has been granted. Thus, it need not be considered further. *See Zittrouer,* 582 F.Supp. at 1477.

■ Although no party has raised this question, the court may raise the issue of lack of subject matter jurisdiction at any time. Fed.R.Civ.P. 12(h)(3). The court finds it does not have subject matter jurisdiction over Counts 7 and 9; therefore, these claims are DISMISSED.

## CONCLUSION

In this order, the court has made the following rulings:

(1) Defendant ERISA / Administrators, Inc.'s motion for summary judgment is GRANTED;

(2) Plaintiff's motion for summary judgment on Counts 1–3 of her complaint is GRANTED as to defendant Edmondson and DENIED as to the other defendants. Plaintiff is awarded damages at the rate of $10 per day from March 30, 1980 until this judgment is paid or plaintiff receives all information requested, whichever first occurs except that the period from February 11, 1982 until October 23, 1984 shall be excluded from this computation;

(3) Plaintiff's motion for summary judgment on Count 4 is GRANTED. She is entitled to distribution of all her accrued benefits in both plans plus interest at the legal rate from June 30, 1980;

(4) Plaintiff's motion for summary judgment awarding compensatory damages on Counts 5 and 6 is GRANTED against defendants Edmondson and Zilm. Damages of $26,943.56 shall be paid into the profit sharing trust;

(5) Plaintiff's claims for punitive damages are DISMISSED;

(6) Counts 7 and 9 of plaintiff's complaint are DISMISSED;

(7) Plaintiff is GRANTED summary judgment on Count 10 of her complaint. The pension and profit sharing plans are terminated as of June 30, 1978;

(8) Plaintiff's motion for attorneys fees is DEFERRED until this litigation is concluded; and

(9) The parties shall have sixty (60) days from the date of this order to complete discovery.