**Stanley MITNIK and Barbara Mitnik, trustees on behalf of Bonnell Dress Company Pension Fund and Bonnell Manufacturing Company Inc. Pension Fund**

v.

**Joseph F. CANNON, Retirement Plan Consultants, Ltd. and Frederic A. Shapiro.**

**Civ. A. No. 91–6440.**

United States District Court, E.D. Pennsylvania.

Feb. 21, 1992.

Joseph D. Dinoto, Sheller, Ludwig & Badey, Philadelphia, Pa., for plaintiffs.

Jack Meyerson, Philadelphia, Pa., for defendants.

## MEMORANDUM

BARTLE, District Judge.

Plaintiffs Stanley and Barbara Mitnik ("Trustees") have brought this action in their capacity as Trustees on behalf of Bonnell Dress Company Pension Fund and Bonnell Manufacturing Company Inc. Pension Fund ("Pension Funds"). The Trustees instituted this action under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.* The Trustees also allege state law claims such as fraudulent misrepresentation, breach of contract, and breach of fiduciary duty. Defendants Joseph F. Cannon ("Cannon") and Retirement Plan Consultants, Ltd. ("Plan Consultants") have filed a Motion for Summary Judgment or in the Alternative to Dismiss and for Sanctions without having filed an answer to the Complaint.

According to the Trustees' Complaint, sometime prior to June of 1984, the Trustees retained defendant Frederic A. Shapiro ("Shapiro") to be the attorney for the Pension Funds. It was Shapiro's job to advise the Trustees regarding their legal obligations in administering the Pension Funds. He was also to file all necessary tax forms, trustee and fiduciary documents, and supervise investments for the Pension Funds.

In January, 1984, upon the recommendation of Shapiro, the Trustees hired Cannon and Plan Consultants to render pension administrative services to the Pension Funds. Cannon is the President of Plan Consultants. The Trustees allege that Plan Consultants is "in the business of arranging, maintaining and supervising investments for Retirement Plans ... and has the responsibility, through its duly authorized agents, servants and employees, to monitor those investments."

In June, 1984, Cannon and Plan Consultants began sending checks from the Pension Funds to Shapiro to be invested in certificates of deposit. Shapiro wrongfully appropriated the money to be received from the Pension Funds for his own benefit and did not purchase any certificates of deposit. From December, 1984 through December 1988, however, the annual statement of assets and liabilities prepared by Cannon for the Pension Funds showed the certificates of deposit as assets. In January, 1990 the Trustees discovered that the certificates of deposit did not exist. On October 3, 1990 Shapiro pleaded guilty, in the United States District Court for the Eastern District of Pennsylvania, to mail fraud, admitting that he had defrauded the Pension Funds in the amount of $197,486.

According to an uncontradicted affidavit of defendant Cannon, the services typically rendered by Plan Consultants included, among other things, establishing an opening balance sheet for the pension trust, and for each participant, establishing and maintaining books of original entry (e.g. general journals and general ledger accounts), recording and reconciling trust transactions on an annual basis and preparing trust financial statements, reviewing funding requirements, preparing an annual summary report, issuing an annual report to the Trustees which includes an annual statement and a balance sheet listing all assets, and preparing various tax returns and reports. Cannon further stated that these are the services which he renders in the course of his business and which he rendered to the Trustees while handling the Pension Funds.

The Trustees allege in their Complaint that Cannon and Plan Consultants violated their fiduciary duty pursuant to ERISA, 29 U.S.C. § 1104[1], by failing to

---

1. 29 U.S.C. § 1104(a)(1) states:

  (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

  (A) for the exclusive purpose of:

  (i) providing benefits to participants and their beneficiaries; and

  (ii) defraying reasonable expenses of administering the plan;

  (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capaci-

investigate and evaluate the investments in the certificates of deposit which Shapiro was to have made for the Pension Funds. The Trustees also allege that Cannon violated his fiduciary duty under ERISA, 29 U.S.C. § 1021, 1023(b)(3), and 1024(b)(3),[2] by failing "to disclose information regarding investments in the certificates of deposit ... by never describing the terms of the certificate of deposit or where they were being held."

An essential element of the Trustees' ERISA claims is that Cannon and Plan Consultants were operating as "fiduciaries" under ERISA. Section 1002(21)(A) of ERISA describes who may be deemed a fiduciary for purposes of the statute:

(21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

■ To be a fiduciary under ERISA, therefore, one must at least have "discretionary" authority or control respecting management or disposition of assets, authority or responsibility to render investment advice, or "discretionary" authority

or responsibility in the administration of the plan. Under the statute and cases interpreting it, a mere ministerial role will not be sufficient.

■ The Court of Appeals for this Circuit, for instance, determined that an accounting firm which performed several yearly audits for the plaintiff's pension fund had no fiduciary responsibility under ERISA. The Court reasoned that the performance of standard auditing tasks do not constitute the "discretionary authority or discretionary responsibility in the administration of a ... plan" necessary to qualify the auditors as fiduciaries under ERISA. *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1148–49 (3d Cir.1989). In addition, accountants performing normal accounting functions for a plan, such as reviewing the books and preparing financial statements and tax returns are not fiduciaries under ERISA. *Yeseta v. Baima,* 837 F.2d 380, 385 (9th Cir.1988). In that case the Court also held that an attorney whose sole function was to review the plan and its compliance with the law and who counseled certain parties to make withdrawals from the plan was not a fiduciary. *Yeseta* at 384. *See also, Anoka Orthopaedic Associates, P.A. v. Lechner,* 910 F.2d 514, 517 (8th Cir.1990); and *Brown v. Roth,* 729 F.Supp. 391, 396 (D.N.J.1990).

In *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan,* 650 F.Supp. 359 (N.D.Ga. 1986), a case which is similar to the one at bar, plaintiff alleged that one of the defendants, ERISA Administrators, Inc. ("EAI"), had breached its fiduciary duty to a plan. EAI was a plan administration company.

---

ty and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

**2.** These sections are included in the regulatory provisions of ERISA. 29 U.S.C. § 1021 deals

with the duties of disclosure and reporting of an administrator of an employee benefits plan. 29 U.S.C. § 1023(b)(3) lists the information which must be attached to required statements of assets and liabilities, or other required statements under § 1023(b). Finally, 29 U.S.C. § 1024(b)(3) deals with the time period after the close of the fiscal year of the plan, during which the administrator is required to furnish copies of the statements and schedules for the fiscal year to the participants and to each beneficiary receiving benefits under the plan.

The court, in deciding cross motions ·for summary judgment on the issue of breach of fiduciary duty, concluded that EAI, who had submitted an uncontroverted affidavit showing that it performed accounting and recording keeping functions only, was not a fiduciary.

> [T]he Department of Labor also has ruled that persons or entities who perform the administrative functions done by EAI, such as calculating service credits and benefits, preparing government reports and employee communications material, and collecting and applying contributions, but who do not have discretionary authority to make decisions or policies regarding these activities are not fiduciaries. ERISA Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8(D–2) (1985).

*Chambers* at 376.

As set forth above, Cannon and Plan Consultants merely prepared year end reports submitted to the government and performed other accounting and bookkeeping tasks for the Pension Plans. These ministerial tasks included establishing an opening balance sheet for the pension trust, establishing and maintaining books of original entry, recording and reconciling trust transactions on an annual basis and preparing trust financial statements. Other tasks performed by Cannon and Plan Consultants included issuing an annual report to the Trustees, which included an annual statement and a balance sheet listing all assets, and preparing various tax returns and reports. These are merely ministerial functions. Cannon and Plan Consultants had no more and probably less authority than did the auditors, accountants and lawyer, and plan administrator in *Painters of Philadelphia, Yeseta,* and *Chambers, supra,* respectively.

Since the Trustees have not produced any contradictory evidence but have relied solely on unsworn statements and allegations in pleadings, they have not established any genuine issues of material fact under Rule 56(e) of the Federal Rules of Civil Procedure.[3] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Tilden Financial Corp. v. Palo Tire Service, Inc.,* 596 F.2d 604, 608 (3d Cir.1979). Accordingly, defendants' motion for summary judgment on Counts I and II of the Complaint will be granted.[4]

Counts IV through VII of the Complaint are based upon state law claims such as fraudulent misrepresentation, breach of contract and breach of fiduciary duty. Although varied, they all relate to and arise from the relationship between the Pension Fund and defendants, an area and relationship which is governed by ERISA.

It is well established that ERISA contains a very broad pre-emption provision which states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

29 U.S.C. § 1144(a). The Supreme Court has interpreted this preemption statute broadly. *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 482–483, 112 L.Ed.2d 474 (1990). *See, Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). A state law "relates to" an employee benefit plan if it has a connection with or reference to the plan, even if the law is not specifically designed to affect the plan, or if the effect is only indirect. *Pilot Life Ins. Co. v.*

---

**3.** Rule 56(e) provides in relevant part:
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate shall be entered against the adverse party.

**4.** Because we the defendants have relied on sworn statements outside the Complaint, a Motion to Dismiss with respect to Counts I and II is not appropriate.

*Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Ingersoll–Rand Co., supra.*

■ Here, the state law claims of fraudulent misrepresentation, breach of contract and breach of fiduciary duty all "relate to" the role which Cannon and Plan Consultants played in dealing with the Pension Funds. The issues arise out of the alleged fiduciary relationship between Cannon and Plan Consultants and the Bonnell Dress Company Pension Fund and Bonnell Manufacturing Company, Inc. Pension Fund—the very heart of the ERISA legislation. Such claims are the type that ERISA was designed to pre-empt. *Ingersoll–Rand,* 111 S.Ct. at 483. Accordingly, the state law claims of Counts IV through VII shall be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

■ Finally, Cannon and Plan Consultants move to dismiss Count III of the Complaint in which the Trustees allege a violation of RICO, 18 U.S.C. § 1962(c) and (d).[5] "A § 1962(c) violation requires a finding that the defendant 'person' conducted or participated in the affairs of an 'enterprise' through a pattern of racketeering activity." *Brittingham v. Mobil Corp.,* 943 F.2d 297, 300 (3d Cir.1991). 18 U.S.C. § 1961(4) (1988). Cannon and Plan Consultants are alleged to be the enterprise. The Court of Appeals has held in *Brittingham, supra,* that the "person" charged with the violation of § 1962(c) must be distinct from the "enterprise." *Brittingham,* at 300–01; *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 633–34 (3d Cir.1984). Since

Count III of the Complaint alleges that Cannon and Plan Consultants are both the defendants and the enterprise, plaintiffs have not alleged a violation of RICO under § 1962(c) or under § 1962(d), the conspiracy section. Consequently, the Motion to Dismiss Count III of the Complaint shall be granted.

Defendants Cannon and Plan Consultants have also filed a motion for Sanctions under Rule 11 of the Federal Rules of Civil Procedure.[6] That motion is without merit and shall be denied. *Mary Ann Pensiero Inc. v. Lingle,* 847 F.2d 90, 99 (3d Cir.1988).

---

**5.** 18 U.S.C. § 1962(c) and (d) state:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**6.** Rule 11 provides in relevant part:

Every pleading … shall be signed by at least one attorney or record in the attorney's individual name.... The signature of an attorney … constitutes a certificate by the signer that the signer has read the pleading …; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.