758 F.2d 1566
 6 Employee Benefits Ca 1707
 Shellie P. McKNIGHT, Plaintiff-Appellee,
v.
SOUTHERN LIFE AND HEALTH INSURANCE COMPANY, a Corporation,
and Southern Life and Health Insurance Company
Revised Retirement Plan, Defendants-Appellants.
Shellie P. McKNIGHT, Plaintiff-Appellant,
v.
SOUTHERN LIFE AND HEALTH INSURANCE COMPANY, a Corporation
and Southern Life and Health Insurance Company
Revised Retirement Plan, Defendants-Appellees.
 Nos. 84-7511, 84-7719.
 United States Court of Appeals,
Eleventh Circuit.
 April 30, 1985.
 
 Don P. Bennett, Herring & Bennett, Dothan, Ala., for Shellie P. mCknight.
 L. Lister Hill, Capell, Howard, Knabe & Cobbs, J. Lister Hubbard, Montgomery, Ala., for Southern Life and Health Ins. Co., et al.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before HENDERSON and HATCHETT, Circuit Judges, and ALLGOOD,* District Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this case, the district court determined that an employee was entitled to credit for isolated segments of service under a retirement plan pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. Sec. 1001-1381. We affirm.
 
 FACTS
 
 2
 Southern Life and Health Insurance Company (Southern Life) employed Shellie P. McKnight during three isolated segments of time between December, 1951, and August, 1983, when he retired. The dates of McKnight's employment are as follows:
 
 
 3
 EMPLOYED TERMINATED
 -------- ----------
December 31, 1951 August 21, 1961
February 22, 1965 March 10, 1969
March 29, 1971 August 1, 1983[1]
 
 
 4
 Southern Life maintained a retirement benefit plan (plan) for its employees. Upon McKnight's retirement in 1983, the administrator of the plan determined that he was entitled to receive the pension benefit of $114.22 per month based upon his employment between March 29, 1971, and August 1, 1983.
 
 
 5
 McKnight filed suit under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. Sec. 1001-1381 (West 1982), to challenge the plan administrator's failure to provide retirement benefits for his previous periods of employment. The district court entered summary judgment for McKnight and directed Southern Life to give McKnight retirement credit for all his time of service with the company.
 
 
 6
 We must decide whether McKnight's retirement plan should include credit for his two previous periods of employment which preceded his final uninterrupted 12 1/3-year term.
 
 DISCUSSION
 
 7
 In deciding that McKnight was entitled to credit for his previous periods of employment, the district court considered various provisions of Southern Life's pension plan. Article III provides, in relevant part:
 
 
 8
 (1) CREDITED SERVICE: ... The credited service of a participant shall be determined as follows: (a) Each participant who was a 'Member' (as defined in the Former Plan) of the Former Plan prior to the ERISA effective date and whose 'Continuous Service' as defined in the Former Plan, had not been terminated prior to the ERISA effective date shall be credited with a number of years (including a proportionate allowance for completed months) of credited service equal to the number of years of 'Continuous Service' as defined in the Former Plan, which would have been credited to him immediately prior to the ERISA effective date pursuant to the Former Plan.
 
 
 9
 (b) Each Participant shall be credited with one year of Credited Service for each of his years of service as an eligible employee....
 
 
 10
 ....
 
 
 11
 (d) A person who becomes a Former Participant pursuant to section 3(d) of Article II hereof and who thereafter again becomes a participant shall not be credited with a year of Credited Service, or any proportionate allowance for completed months, for any period described in (a) or (b) of this section (1) rendered prior to the time he became a former participant unless the number of his consecutive Breaks in Service is less than the number of his Years of Service completed prior to the commencement of the consecutive Breaks in Service. [Emphasis added.]
 
 
 12
 The district court interpreted these sections to mean that an employee who voluntarily leaves his employment and returns several years later shall not receive credit for his previous period of employment unless the employee's number of consecutive breaks in service is less than the number of his years of service prior to the beginning of the consecutive breaks in service. McKnight's first period of employment lasted approximately 9 1/2 years; his second term of employment lasted approximately 4 years. McKnight's number of breaks in service, 2, is less than the 13 1/2 years of service. Hence, the district court found that, according to the plan, McKnight was entitled to credit for previous service.
 
 
 13
 Additionally, the employee's summary booklet, distributed by Southern Life, further supports the district court's determination. The summary booklet is intended to simplify and explain the company's retirement plan. Section 8 of the summary, which interprets Article III, section (1)(d) of the plan, states in relevant part:
 
 8. Termination of Employment
 
 14
 If a participant has a break in service prior to completion of ten years of service for a reason other than normal retirement, he is subject to loss of this then accrued benefit. Such a former participant who may again become a participant can regain credit for previous years before the break commenced, provided that the total consecutive years counted as breaks in service are less then the previous years of service prior to commencement of the period of break in service.
 
 
 15
 McKnight worked approximately 9 1/2 years before he had his first break in service. After 3 1/2 years, he went back to work. He worked approximately 4 years before he had a second break in service which lasted approximately 2 years. He went back to Southern Life in March, 1971, and continued to work until his retirement in August, 1983. McKnight's break-in-service years totalled approximately 5 1/2 years; his previous years of service before the March 10, 1969, break in service totalled approximately 13 1/2 years. Because McKnight's years of employment exceeded his years of breaks in service, the district court determined that, under the summary booklet, McKnight should regain his credit for previous years of employment before March, 1971.
 
 
 16
 Although the plan and summary are worded differently, the result is the same. McKnight's years of service before his breaks in service exceed the number of breaks in service and the total number of years as breaks in service. Under either analysis, McKnight is entitled to credit for his years of employment prior to March, 1971. We agree with the district court's interpretation.
 
 
 17
 Whether Southern Life's pension plan complies with ERISA is not at issue; rather, the dispute involves an interpretation and application of the plan and summary.
 
 
 18
 Southern Life argues that according to Sharron v. Amalgamated Foods, 704 F.2d 562, 564 (11th Cir.1983), the plan administrator's decision must be sustained as a matter of law unless his decision was arbitrary or capricious. Southern Life contends that because the pension fund trustee's denial of McKnight's benefits was sound and consistent with the plan, this decision must be sustained.
 
 
 19
 The Sharron court upheld the plan administrator's decision to deny a truck driver's pension after twenty-five years of employment because of his subsequent break in service prior to retirement. Sharron unsuccessfully challenged the plan's reasonableness, as opposed to the arbitrariness of the administrator's decision.
 
 
 20
 In Sharron, the plan required, among other provisions, that the employee complete fifteen years of continuous service before being entitled to receive benefits. "Continuous service" was defined as the accumulated years of employment calculated from the employee's reemployment date following a break in service. Sharron, 704 F.2d at 565. Furthermore, the plan stated that a break in service occurred if, prior to retirement, an employee was not in covered employment for a period of three consecutive years after April 1, 1969. Because Sharron had terminated his employment with the company in 1973 for more than three years before he applied for retirement benefits, the court accepted the administrator's determination that Sharron did not meet the pension requirements because of the duration of his break in service.
 
 
 21
 Similarly, Southern Life suggests that the administrator's decision should be upheld as reasonable and sound. We do not agree. Like the administrator in Sharron, the district court applied a literal interpretation of the relevant provisions of Southern Life's pension plan, Article III, section (1)(d), and found that McKnight was entitled to employment credit. A subsequent analysis of the plan summary, section 8, which parallels Article III, section (1)(d) of the plan confirmed this result.
 
 
 22
 A comparison between the Sharron summary pamphlet and the Southern Life summary booklet merits discussion. Both summaries were designed to simplify and explain their respective pension plans. In Sharron, however, the booklet provided an additional four pages of hypothetical questions and answers to further aid the employee in understanding the plan. Sharron's situation was addressed and clearly explained. He, therefore, had a reliable document by which he could readily analyze the affect of his actions on his pension benefits. Hence, the district court properly upheld the administrator's decision to deny benefits. In Sharron, the summary booklet accurately and simply provided the employees with an understanding of the plan's meaning and application; such reliance is consistent with the purpose of the summary.
 
 
 23
 Likewise, Southern Life's summary booklet was subject to a reasonably clear and literal interpretation, although it was not supplemented with questions and answers demonstrating the plan's application. Following a literal interpretation of the summary, the district court correctly found that McKnight was entitled to credit for all of his time with Southern Life.
 
 
 24
 Southern Life stresses that the pension plan and summary are consistent and that both comply with the provisions of ERISA. While a plan's summary may be easily understood, it does not fully comply with ERISA if it is not an accurate interpretation of the original pension plan. Assuming that Southern Life's interpretation of the plan is correct, reasonable application of the summary provision does not support Southern Life's position. ERISA provides that the summary shall be an accurate and comprehensive document that reasonably apprises the employees of their rights under the plan.[2]
 
 
 25
 Southern Life contends that the district court misinterpreted section 8 of the summary plan because the district court's interpretation does not conform with the comparable plan section.
 
 
 26
 Although Southern Life submits that both the plan and summary are consistent, Southern Life asserts that if a conflict arose between the plan and the summary, the plan should prevail. Such an assertion defeats the purpose of the summary. It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet.
 
 
 27
 Southern Life asserts that the revised plan, effective after January 1, 1976, adopts or "grandfathers" the terms of the former plan. Southern Life argues that an employee must be a member of the plan in order to be entitled to credited service. "Member" is defined under the former plan as "all full time active employees of the company with three or more years of continuous service as of the effective date and who commence such continuous service in the company prior to the fiftieth birthday will be members of the plan." "Continuous service" is defined as "that period of consecutive time that the employee has been on the payroll of the company requiring full time compensation." Southern Life insists that to credit McKnight with his two periods of nonconsecutive years of employment would defeat the "continuous" requirement of the plan.
 
 
 28
 The former plan did not contain language regarding "breaks in service"; presumably, an employee's termination of employment for a period of time would have resulted in a loss of retirement credit. Article III, section (1)(d) of the revised plan, however, provides that in certain situations an employee's periodic termination of employment may not result in a forfeiture of his retirement credit. Although Southern Life argues that the revised plan does not apply retroactively, McKnight cites Article II, section (1)(a) of the revised plan which indicates otherwise. Article II, section (1)(a) provides in relevant part:
 
 
 29
 (1) EFFECTIVE DATE OF PLAN:
 
 
 30
 (a) This plan became effective as the Former Plan as of December 31, 1959 ....
 
 
 31
 Because the revised plan is designed to begin on December 31, 1959, when McKnight was employed, the break-in-service provision under Article III, section (1)(d), applies to save McKnight's employment credit for two pre-1971 periods of service.
 
 
 32
 Southern Life argues that Article III, section (1)(d) is not a grant, but a limitation on the amount of employment credit. Southern Life submits that this provision only applies to service which "overlaps or straddles the ERISA effective date." We find this interpretation difficult to extract from the language of Article III, section (1)(d). Furthermore, section 8 of the summary, which explains this article, does not allow for such an interpretation.
 
 
 33
 Additionally, Southern Life argues that a plan is expressly permitted to disregard service "if such service would have been disregarded under the rules of the plan with regard to breaks in service as in effect on the applicable date." I.R.C. Sec. 411(a)(4)(F), 26 U.S.C.A. Sec. 411(a)(4)(F) (West 1982); 29 U.S.C.A. Sec. 1053(b)(1)(F) (West 1982). Although Southern Life may have intended to deny credit for interrupted periods of employment prior to 1976, the revised plan and summary provide to the contrary. The revised plan not only adopts the provisions of the former plan, but also incorporates new provisions retroactively effective December 31, 1959, before McKnight's first break in service.
 
 
 34
 We hold that McKnight is entitled to employment credit for his pre-1971 periods of employment. As a Southern Life employee, McKnight was justified in relying on the summary booklet to determine his pension rights. The district court reasonably interpreted the summary provision.
 
 ATTORNEY'S FEES
 
 35
 McKnight appeals the district court's denial of attorney's fees under section 502(g) of ERISA, 29 U.S.C.A. Sec. 1132(g) (West 1984), which provides that: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and cause of action to either party."
 
 
 36
 In Ironworkers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir.1980), the court promulgated guidelines to assist the district courts in deciding whether to award attorney's fees. These factors include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Bowen, 624 F.2d at 1266. The court identified these factors as the "nuclei of concerns" and stated that no one factor was necessarily decisive. Bowen, 624 F.2d at 1266.
 
 
 37
 Under the first factor, the district court found no evidence of bad faith. To the contrary, McKnight argues that Southern Life demonstrated bad faith by drafting and distributing a summary plan and then refusing to honor his rights in accordance with the plan. Southern Life submits that its position was tenable and that it made apparent attempts to comply with the ERISA provisions. Although we find that Southern Life erred, we find no evidence of bad faith.
 
 
 38
 Under the second factor, the district court found no evidence of either party's ability to satisfy an award of attorney's fees. McKnight submits that since section 1132(g) is a remedial provision, it should be liberally construed in favor of a prevailing plan participant. Section 1132(g), however, does not award attorney's fees to the prevailing party outright; but rather, allows for attorney's fees for either party in accordance with the district court's discretion. We find no abuse of discretion.
 
 
 39
 The third factor requires consideration of the deterrent effect an award of attorney's fees may have on other persons. The district court found no direct evidence that an award of attorney's fees would deter others acting in similar circumstances, although it expressed reservation with its decision. We find that an award of attorney's fees would encourage other employers to furnish understandable and accurate summary plans upon which employees can reasonably rely in calculating their benefits under the pension plan.
 
 
 40
 Pursuant to the fourth factor, McKnight's action does not directly benefit all participants of an ERISA plan or resolve a peculiar legal ERISA question. Furthermore, under the fifth factor, we find that both parties presented substantial arguments, although McKnight maintained the stronger position.
 
 
 41
 In sum, we find no abuse of discretion in the district court's denial of attorney's fees. Accordingly, we affirm.
 
 
 42
 AFFIRMED.
 
 
 
 *
 Honorable Clarence Allgood, U.S. District Judge from the Northern District of Alabama, sitting by designation
 
 
 [1]
 McKnight and Southern Life's records reflect different termination dates in 1969 and 1983. Southern Life contends that McKnight left the company's employment on March 10, 1969, and August 29, 1983. The slight variance in dates, however, is not material to resolution of this case
 
 
 [2]
 Section 102 of ERISA provides in relevant part:
 (a)(1) A summary plan description of any employee benefit plan ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.
 29 U.S.C.A. Sec. 1022(a)(1) (West 1982).