Carey Wayne DANIEL, Plaintiff

v.

MASTER HEALTH PLAN, INC. and
Georgia Power Company,
Defendants.

MASTER HEALTH PLAN, INC.,
Third Party Plaintiff

v.

GEORGIA POWER COMPANY
MEDICAL BENEFITS PLAN,
Third Party Defendant.

Civ. A. No. CV192–110.

United States District Court,
S.D. Georgia,
Augusta Division.

Sept. 20, 1994.

Thomas F. Allgood, Jr., Allgood, Childs, Mehrhof & Millians, Augusta, GA, for Carey Wayne Daniel.

Phillip A. Bradley, Long, Aldridge & Norman and William Scott Laseter, Atlanta, GA, for Master Health Plan, Inc.

Benjamin Howard Brewton, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, and Douglas D. Salyers and Richard L. Ford, Troutman & Sanders, Atlanta, GA, for Georgia Power Co.

## ORDER

BOWEN, District Judge.

Pending in the above-captioned case are various motions for summary judgment. For the reasons stated below, Georgia Power Company Medical Benefits Plan's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; Master Health Plan, Inc.'s Motion for Summary Judgment[1] is **GRANTED IN PART** and **DENIED IN PART**; and Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This lawsuit stems from a tragic automobile accident involving Carey Wayne Daniel, the Plaintiff herein. In the accident, Plaintiff sustained severe burns over much of his body. The cost of his medical treatment to date exceeds two million dollars. At issue is the extent of liability of two group health insurance providers, Master Health Plan, Inc. (Master Health) and Georgia Power Company Medical Benefits Plan (Georgia Power) for the cost of Plaintiff's medical treatment.[2]

The following facts, unless otherwise noted, are not disputed. Plaintiff is the natural son of Larry W. Daniel and Catherine Rabun f/k/a Catherine Daniel. Plaintiff was born in 1973 and lived with his natural parents until November 1978, when they divorced. Under the divorce decree, Larry Daniel was (at all times relevant to this lawsuit) responsible for all of Plaintiff's reasonable medical and dental bills. At the time of the subject vehicular accident, Plaintiff was a covered dependent of Larry Daniel under the "Master Health Plan Medical Benefits Plan," sponsored by Master Health.[3]

Under the divorce decree, Plaintiff's mother had (at all times relevant to this lawsuit) legal custody of Plaintiff. In 1979, Plaintiff's mother married Perritt Rabun, an employee of Georgia Power. Through his job with Georgia Power, Perritt Rabun had group health insurance coverage for himself and his family. Upon his marriage to Plaintiff's mother, Perritt Rabun added Plaintiff as a

1. Master Health Plan, Inc.'s Motion is cast as two motions in one, filed against two separate entities: "Master Health Plan, Inc.'s Cross–Motion for Summary Judgment Against the Georgia Power Company and Motion for Summary Judgment against the Georgia Power Company Medical Benefits Plan." Because Georgia Power Company has not filed a motion for summary judgment, and for the reasons stated in note 2, *infra*, Master Health Plan Inc.'s "Cross" Motion for Summary Judgment against Georgia Power Company and its Motion for Summary Judgment against Georgia Power Company Medical Benefits Plan are treated in this Order as one motion for summary judgment. For docketing purposes, the Court's ruling will apply to each motion separately.

2. Georgia Power Company, not Georgia Power Company Medical Benefits Plan, was named as a defendant in the Complaint. Both entities answered the Complaint, however, and, although the Complaint has not been amended, the parties have treated both as defendants. The Court is not sure that the separate identities of the two entities matters for purposes of this case because, as noted below, Georgia Power Company Medical Benefits Plan is a self-insured plan, and the assets of *Georgia Power Company* fund payment of benefits under the plan. For simplicity, the two entities are hereinafter sometimes referred to collectively as "Georgia Power."

3. Larry Daniel obtained this insurance coverage through his employer, the Federal Paper Board Company, Inc.

covered dependent under his health insurance with Georgia Power.

Georgia Power is the sole source of funding for its health insurance plan, the Georgia Power Company Medical Benefits plan; there are no separate trust funds out of which to pay plan benefits.

From 1979, when Catherine and Perritt Rabun married, until June of 1990, Plaintiff lived with the Rabuns. The parties dispute who had "actual" custody of Plaintiff after June, 1990. In June of 1990, Plaintiff moved some of his belongings to Larry Daniel's residence, where Plaintiff began to reside. Thereafter, Plaintiff continued to spend some nights with the Rabuns, however. After June, 1990, the Rabuns continued to share Plaintiff's living expenses, such as clothing, gas money, spending money, etc., with Larry Daniel.

In the latter part of 1990, Georgia Power notified Perritt Rabun that his position with the company would be eliminated the following year. Rabun terminated his position, effective January 15, 1991, pursuant to the Georgia Power Company Project and Facility Group Outplacement Program, which afforded Rabun severance pay and other benefits. Georgia Power also notified Rabun that he could elect to continue his health insurance coverage for himself and his dependents for a specified length of time at his own expense. Rabun chose continuation coverage for himself and his dependents, including Plaintiff.

On June 21, 1991, Plaintiff was injured in an automobile accident. As previously indicated, the cost of Plaintiff's medical treatment for injuries that he sustained in the accident have been exorbitant. Almost immediately following the accident, insurance claims were tendered by Plaintiff's health care providers to both insurance plans involved in this case. Master Health has paid, to date, at least $1.2 million dollars in benefits for Plaintiff's treatment.

On October 14, 1991, Georgia Power notified the Rabuns of its decision that Plaintiff was not a covered dependent under its plan and that the denial of coverage was retroactive to February, 1991 (when Perritt Rabun elected continuation coverage). Georgia Power refuses to pay any of Plaintiff's medical claims based on its contention that he was not a covered dependent of Perritt Rabun at the time of the accident.

Plaintiff filed this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, naming Master Health and Georgia Power as Defendants.[4] Plaintiff's Complaint prompted a volley of claims and defenses asserted by the Defendants.[5] All claims and defenses raised in this litigation, whether as third-party plaintiff/defendant, cross-claimant, counterclaimant, or otherwise, derive from the parties' respective positions on two basic questions: (1) Was Plaintiff a covered dependent of Perritt Rabun under Georgia Power's plan at the time of the accident? (2) If so, which provider is the primary insurer? Georgia Power, Master Health and Plaintiff seek summary resolution of both questions.[6]

## II. ANALYSIS

### A. *Standards for Summary Judgment*

The Court should grant summary judgment only if "there is no genuine issue as to

---

4. (*See* note 2, *supra.*)

5. Georgia Power Company Medical Benefits Plan filed a cross-claim against Master Health. Master Health filed a third-party Complaint against Georgia Power Company Medical Benefits Plan. Additionally, Master Health filed a cross-claim against Georgia Power Company Medical Benefits Plan asserting the same relief sought in its third-party Complaint. Georgia Power Company Medical Benefits Plan, as third-party defendant, counterclaimed for the same relief sought in its cross-claim.

6. On April 12, 1993, Plaintiff and Master Health moved to dismiss Plaintiff's action against Master Health with prejudice. On April 30, 1993, the Court entered an Order dismissing with prejudice Plaintiff's claims against Master Health.

As Plaintiff has settled with Master Health and in his summary judgment brief incorporates by reference Master Health's arguments in support of summary judgment, Plaintiff's and Master Health's Motions for Summary Judgment are essentially one. The balance of this Order will speak only of the motions filed by Master Health and Georgia Power; resolution of the insurers' motions naturally will dictate the Court's ruling on Plaintiff's motion.

any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried the respective burdens set forth above. *See Clark,* 929 F.2d at 609 n. 9.

B. *Summary Judgment in this Case*

There is no dispute that the two group insurance plans in this case are "employee welfare benefit plan[s]," or "welfare plan[s]," within the meaning of ERISA. *See* 29 U.S.C. § 1002(1). ERISA authorizes civil actions in federal court by any ERISA-plan participant or beneficiary "to recover benefits due him under the terms of his plan...." *Id.,* § 1132(a)(1)(B). In his Complaint, Plaintiff maintains that the Defendants owe him payment for certain insurance benefits under the respective health insurance plans. As noted above, however, Plaintiff has settled his claim against Master Health. The real dispute remaining in the case is between Master Health and Georgia Power regarding the latter's liability, if any, for the cost of Plaintiff's medical treatment.

As a threshold matter, counsel differ on what standard of review—arbitrary and capricious, or de novo—should confine this Court's scrutiny of Georgia Power's decision to deny Plaintiff coverage. *See generally Brown v. Blue Cross and Blue Shield of Ala.,* 898 F.2d 1556, 1559–68 (11th Cir.1990).

The label given the process of reviewing a plan fiduciary's decision to deny benefits, however, is not as critical as determining the proper degree of deference to the plan administrator's decision. *See id.* Because the Plan Administrator of Georgia Power Company Medical Benefits Plan serves as the decision-making fiduciary for benefits paid out of Georgia Power Company's assets, even under the arbitrary and capricious standard, the proper level of deference here is slight. The decision to deny Plaintiff coverage is reviewed accordingly.

Resolution of this insurance coverage dispute invokes the Consolidated Omnibus Budget Reconciliation Act (COBRA) amendments to ERISA. 29 U.S.C. §§ 1161, *et seq.* (1986). COBRA purports to assure continued access to private health insurance under circumstances enumerated therein, where such protection would otherwise be unaccessible. COBRA's amendments to ERISA emanated from "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, 99th Cong., 2d Sess. 44. *reprinted in* 1986 U.S.Code Cong. & Admin.News pp. 42, 579, 622. COBRA, as remedial legislation, is "liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans." *McGee v. Funderburg,* 17 F.3d 1122, 1124 (8th Cir.1994).

Among other things, COBRA compels employers operating ERISA plans to offer self-paid "continuation coverage" to their employees upon the occurrence of "qualifying events," i.e., events that would terminate coverage, including job loss for reasons other than gross misconduct. 29 U.S.C. §§ 1161(a), 1167(3). *See generally National Companies Health Plan v. St. Joseph's Hosp.,* 929 F.2d 1558, 1567–68 (11th Cir.

1991). Continuation coverage is available only to "qualified beneficiaries," 29 U.S.C. § 1167(3), which, generally speaking, excludes individuals (otherwise meeting the definition) who have or obtain other health insurance coverage, *id.,* § 1162(2)(D)(i). Against this backdrop, the decisive issues the parties' arguments posit are addressed *seriatim.*

■ First, Georgia Power argues that at the time of the accident, Plaintiff was not a "qualified beneficiary" within the meaning of COBRA and hence was ineligible for continuation coverage. Under COBRA, "qualified beneficiary" "means, with respect to a covered employee under a group health insurance plan, any other individual who, on the day before the qualifying event for that employee, is a beneficiary under the plan ... as the dependent child of the employee." 29 U.S.C. § 1167(3)(A)(ii).

Georgia Power argues that Plaintiff was not covered under its plan as a dependent of Perritt Rabun as of the date Rabun terminated his job, the qualifying event. The Georgia Power Company Medical Benefits Plan defines "dependent" to include: "An unmarried Child who has not reached the January 1 first following the Calendar Year of his 19th birthday." [7] (Georgia Power Plan, § 2.12(c).) As of June 1990, when Georgia Power contends Plaintiff became ineligible for continuation coverage, Plaintiff was less than 19 years old and was unmarried. The Georgia Power Plan defines "Child" to include, in addition to a natural or adopted child, a stepchild "living in a regular parent-child relationship and who is dependent upon the Employee ... for support and maintenance." Georgia Power argues that after June 1990, Larry Daniel had "actual" custody of Plaintiff. From that point, Georgia Power contends, Plaintiff and Perritt Rabun no longer lived in a "regular

7. The Court notes Master Health's contention that "the plan document which [Georgia Power] quotes for the definitions of 'covered dependent' and 'child' *was not even in existence* in June of 1990, when the events occurred which [Georgia Power] claims disqualified Carey from coverage." (Master Health Br., April 12, 1993, at 17–18.) The document alluded to appears to be that marked Exh. MHP-3 to Leonard Owens' deposition. Although there seems to be some uncertainty and confusion regarding the actual plan in effect on the determinative date in this lawsuit (*see, e.g.,* McCurry Dep. at 13–1), this plan (i.e., Owens Dep., Exh. MHP-3), appears to be the Georgia Power Company Medical Benefits Plan in operation at all times relevant to this case. (*See id.,* § 2.14.) As discussed below, the language of this plan quoted by Georgia Power does not disqualify Plaintiff from continuation coverage.

parent-child relationship" and, thus, Plaintiff no longer was a beneficiary under the plan as a dependent of Perritt Rabun. (*See* Georgia Power Br., March 12, 1993, at 8.) This argument is without merit.

The vague, ill-defined, elusive concept of a "regular parent-child relationship" often will not apply to a divorce situation, and Georgia Power's convenient, post hoc construction of it to avoid expensive coverage of a plan participant's dependent is contrary to the spirit of the insurance agreement. As the drafter, Georgia Power had the burden of using clear and precise contract language that could be fairly and realistically applied to the common family situation confronted in this case. That Plaintiff "moved in" with his natural father in June of 1990, at least under the circumstances clearly evident from the depositions of the concerned individuals, did not render his relationship with his mother and stepfather "irregular" and should not be preclusive for insurance coverage purposes. The entirety of the evidence submitted thus far reveals that Plaintiff's living arrangement in his father's home after June, 1990 was transitional and of indefinite duration. The former spouses lived relatively near each other, in the same community. There is no evidence that Plaintiff's "move" was intended to be permanent or that it severed his financial dependence on the Rabuns. After the move, Plaintiff continued to spend nights at the Rabun household and the Rabuns continued to provide financial support for Plaintiff. Without question, Plaintiff remained dependent upon them, financially and otherwise.[8] Accordingly, I find that under the Georgia Power Plan, Plaintiff was an eligible dependent of Perritt Rabun before and after he moved his belongings into Larry Daniel's home in June 1990. That being so, on the day before Perritt Rabun terminated his job, Plaintiff was a beneficiary under the Georgia Power Plan as a dependent child of Perritt Rabun. Under 29 U.S.C. § 1167(3)(A)(ii),

therefore, Plaintiff was a "qualified beneficiary."

■ Georgia Power argues that even if Plaintiff was a "qualified beneficiary," he was ineligible for continuation coverage because he had preexisting coverage with Master Health. Indeed, continuation coverage of a qualified beneficiary may be terminated if and when the qualified beneficiary becomes "covered under any group health plan (as an employee or otherwise) which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary[.]" 29 U.S.C. § 1162(2)(D)(i). The Eleventh Circuit Court of Appeals has held, pursuant to 29 U.S.C. § 1162(2)(D)(i), that preexisting coverage of a dependent at the time of the plan participant's COBRA election permits termination of continuation coverage under COBRA. *St. Joseph's Hosp.*, 929 F.2d at 1570. Since Plaintiff was covered by Master Health at the time Perritt Rabun elected continuation coverage through Georgia Power, he was, effectively, ineligible for continuation coverage with Georgia Power. *See id.*

Master Health maintains that its preexisting coverage of Plaintiff does not automatically preclude continuation coverage under the Georgia Power Plan. Master Health argues that a "significant gap" in the coverage provided under the two plans excepts Plaintiff from the general rule that preexisting coverage operates to bar continuation coverage under COBRA. *See generally St. Joseph's Hosp.*, 929 F.2d at 1570–71; *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 (5th Cir. 1990). The Eleventh Circuit has explained:

> [t]here may be … instances when, despite coverage under a preexisting group health plan, an employee is entitled to receive continuation coverage under his previous employer's ERISA plan. If there is a significant gap between the coverage afforded under his employer's plan and his preexisting plan, an employee will be eligible for continuation coverage. This is be-

---

**8.** Georgia Power makes much of the fact that during the years in question, Larry Daniel claimed an exemption for Plaintiff on his federal income tax returns. That Daniel claimed the exemption is not fatal to Plaintiff's eligibility for coverage under the Georgia Power Plan, which makes no mention of tax matters with regard to coverage eligibility determinations. Obviously, only one former spouse can claim the exemption for federal income tax purposes; that does not mean the other spouse does not also provide financial support for the child.

cause, in that situation, the employee is not truly "covered" by the preexisting group health plan, as that term is used by Congress to effectuate its intent; the employee, despite his other coverage, will be liable personally for substantial medical expenses to his and his family's detriment. Denying continuation coverage in that setting would serve to frustrate, rather than foster, Congress' clear intentions.

*St. Joseph's Hosp.*, 929 F.2d at 1571. Relying on *St. Joseph's Hosp.*, Master Health argues that "[e]ven after [Master Health] has paid all claims covered under its policy, it is undisputed that Plaintiff and his family are still liable for tens, if not hundreds, of thousands of dollars in claims." (Master Health Br., April 12, 1993, at 30–31.) This assertion is unsupported by reference to any evidence of record, however, and, furthermore, misapprehends the nature of the "significant gap" exception discussed in the *St. Joseph's Hosp.* decision.

■ That the Rabuns are potentially exposed to significant liability absent dual coverage is not necessarily indicative of a "significant gap" in coverage, according to *St. Joseph's Hosp.*, 929 F.2d at 1571. A "significant gap" is not determined by comparing Plaintiff's (or his family's) potential exposure to liability with and without dual coverage. Instead, the policy benefits of each plan must be examined and analyzed to determine if "coverage under the [Georgia Power Plan] ... would ... put [Plaintiff] in any better position." *Id.* at 1571. This comparison, moreover, must be made without the benefit of hindsight. "[T]he court must look to the difference in the policies *at the time of election*.... In so doing, the policies should be examined to determine their benefits, whether there is any exclusion or limitation on the patient's preexisting condition, and with a view to the treatment the beneficiary may foreseeably require." *Lutheran Hosp. v. Business Men's Assur. Co.*, 845 F.Supp. 1275, 1289 (N.D.Ind.1994) (emphasis added).

Master Health fails to show the Court, based on the two plans' respective exclusions or limitations on pre-existing conditions, that a "significant gap" in coverage, as defined by *St. Joseph's Hosp.*, existed. Although not identical, both plans provide a comprehensive package of health care benefits to plan participants and their eligible dependents. That one plan excludes from coverage certain medical claims covered under the other plan is not, as Master Health would have it, tantamount to a "significant gap" in coverage, where such exclusions or limitations are not based on a preexisting condition of the beneficiary. *See* 29 U.S.C. § 1162(2)(D)(i). The "significant gap" posed by Master Health, like that alleged in *St. Joseph's Hosp.*, "arises ... because [Plaintiff] lack[s] dual coverage, not because [Master Health's] Plan is inadequate[.]" 929 F.2d at 1571. As no significant gap in coverage under the two plans has been shown, Plaintiff's preexisting coverage with Master Health rendered him ineligible for continuation coverage with Georgia Power. 29 U.S.C. § 1162(2)(D)(i). *Cf. St. Joseph's Hosp.*, 929 F.2d at 1571.

Master Health argues that even if Plaintiff was ineligible for continuation coverage, Georgia Power is equitably estopped from denying coverage. Master Health contends that both before and after the accident Georgia Power misrepresented to the Rabuns that Plaintiff would receive continuation coverage. Master Health argues that the Rabuns relied to their detriment on the alleged misrepresentation. Most notably, the Rabuns specifically allege that Georgia Power representatives told them that a prosthesis, which the Rabuns knew was not a covered item under Master Health's plan, would be covered under the Georgia Power Plan. The prosthesis was ordered, and, ironically, Georgia Power notified the Rabuns on the very day the prosthesis was delivered that it would not be covered.

■ Application of traditional notions of equitable estoppel require a showing of detrimental reliance, an issue which cannot be summarily adjudicated on the evidence before me. Oral and informal written interpretations of ambiguous ERISA plan provisions by a plan representative can support an equitable estoppel claim under federal common law. *Id.* at 1571–72.[9] But even if all other

---

**9.** The elements of federal common law equitable estoppel are: 1) a misrepresentation of material

elements of equitable estoppel are assumed at this point, outstanding factual issues present themselves regarding what detriment, if any, the Rabuns suffered.[10]

Georgia Power's failure to fully comply with the statutory requirements of ERISA in drafting its Summary Plan Description estops it from relying upon the terms of the actual plan to deny coverage, however. ERISA requires employers to file summary plans, in addition to their actual plans, with the Secretary of Labor. 29 U.S.C. § 1021(b). This mandate stems from the reality that the average person cannot reasonably be expected to assimilate all information contained in a voluminous health insurance plan. In requiring a compendium of the actual plan's benefits, terms and conditions, Congress intended to apprise plan participants, in laymen's terms, of their rights under the plan. To that end, "[a] summary plan description of any employee benefit plan . . . shall be written in a manner calculated to be understood by the average plan participant, *and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.*" 29 U.S.C. § 1022(a)(1) (emphasis added). Among other things, the summary must apprise all plan participants of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits[.]" *Id.,* § 1022(b).

There is no dispute that Georgia Power's Summary Plan Description (that is, the one in effect and circulation at the time of Perritt Rabun's COBRA election) stated that continuation coverage ceased at the earliest of[11]:

18 months if due to termination of employment, otherwise 36 months; employee becomes eligible for Medicare; *employee becomes covered under another group plan as an employee or otherwise;* the last day of the month for which premiums are paid; or the date the Company no longer offers a group medical plan.[12]

(Georgia Power Br., May 13, 1993, at 27–28.) This language, though accurate in its delineation of *some* events upon which coverage could be terminated, fails to impart that continuation coverage *of a dependent* could cease if other coverage for that dependent exists or is obtained.

Georgia Power maintains that this omission is of no legal consequence, arguing that "this language is an accurate statement of COBRA statutory language." *Id.* at 28. Therefore, Georgia Power reasons, "[t]he [Georgia Power] Plan cannot be accused of misrepresenting COBRA rights when it simply stated to its participants precisely what is contained in COBRA." *Id.* This argument, deceptively appealing at first blush, misses the point of requiring summaries.

"[T]he summary shall be an accurate and comprehensive document that reasonably apprises the employees of their rights under

---

fact; 2) the party to be estopped was aware of the true facts; 3) the party to be estopped intended that the misrepresentation be acted upon or had reason to believe the party asserting the estoppel would rely on it; 4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. *Id.* at 1572.

10. For instance, Catherine Rabun admitted during her deposition that to date the Rabuns have actually paid only $25.00 for Plaintiff's medical claims. On the other hand, it is not clear from the evidence presented thus far what the Rabuns' potential future liability, if any, may be absent dual coverage. There is also an allegation that Perritt Rabun terminated his job earlier than he had to, a decision Plaintiff contends was based in part on Perritt Rabun's belief that Plaintiff and Rabun's other dependents would continue to be covered under Georgia Power's policy. These

and other allegations by the parties regarding the issue of detrimental reliance are sufficiently supported by evidence of record to preclude summary resolution either way.

11. Although § 1022 does not specifically state that COBRA rights must be disclosed in the summary, "COBRA information, because it concerns 'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits,' falls under ERISA's general reference to materials which must be included in a summary plan description." *Branch v. G. Bernd Co.,* 764 F.Supp. 1527, 1530 (M.D.Ga.1991) (quoting 29 U.S.C. § 1022(b)).

12. According to the record, Georgia Power Plan now publishes a plan summary indicating that preexisting coverage of any plan participant subjects that participant to termination of continuation coverage.

the plan." *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985). *See also* 29 U.S.C. § 1022(a)(1) (mandating summaries "sufficiently accurate and comprehensive to reasonably apprise" plan participants and beneficiaries). A summary "does not fully comply with ERISA if it is not an accurate interpretation of the [plan]." *McKnight*, 758 F.2d at 1570. ERISA "contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990). Georgia Power's summary, though accurate in what it says, is glaringly inaccurate here in what it does not say: that Plaintiff could lose continuation coverage if he is or becomes covered under another health insurance plan. Hence, the summary does not comply with ERISA's mandate that the summary detail *all* circumstances—not just some—that could render the plan participant, *or his dependents,* ineligible for continuation coverage. *Id.,* § 1022(b); *see also Branch,* 764 F.Supp. at 1538 n. 14. Georgia Power's summary did not reasonably apprise the Rabuns of all circumstances terminative of Plaintiff's coverage. The critical importance of such information is amplified by the facts of this case.

■ The language in Georgia Power's Summary Plan Description could reasonably be read by the average plan participant to imply that preexisting coverage of a dependent would *not* preclude continuation coverage of the dependent. A summary plan is subject to "a literal interpretation." *McKnight,* 758 F.2d at 1570. The summary in question, read literally, does not tell plan participants that preexisting coverage of *any* plan participant could terminate coverage of that individual.

■ Provisions in a plan summary that are inconsistent with the actual plan supersede the plan's contrary terms. "It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary...." *Id.* at 1570. *See also Heidgerd,* 906 F.2d at 908–09; *Matter of HECI Exploration Co., Inc.,* 862 F.2d 513, 524 (5th Cir.1988). Thus, an inaccurate summary estops the insurer, effectively, from relying on provisions in the actual plan to deny coverage.

■ Unlike traditional equitable estoppel, detrimental reliance need not be proven to recover from an insurer who misrepresents coverage in its plan summary. *See generally Branch,* 764 F.Supp. at 1538–39. Thus, Georgia Power's argument that the COBRA election form signed by Perritt Rabun—indicating among other things that continuation coverage would be terminated if Rabun *or a dependent* became covered under another plan—cured any deficiency in the summary is unavailing.[13] Moreover, whatever benefits a summary plan may reasonably be read to provide are available to the covered individual even though the effect is to extend or enlarge coverage. *Id.* Because Georgia Power's Summary Plan Description could reasonably be read to provide coverage for Plaintiff notwithstanding his preexisting coverage by Master Health, Georgia Power is estopped as a matter of law from denying him coverage based on his preexisting coverage. Since Georgia Power has failed to show any legitimate basis for denying Plaintiff coverage, I find, contrary to the Plan Administrator's determination, that Plaintiff was covered under the Georgia Power plan at the time of the subject automobile accident.

■ Having determined that Plaintiff was a covered dependent of Perritt Rabun, the Court must determine, if it can at summary judgment, which insurer is the primary insurance carrier and which is secondary. This issue is resolved by reference to the respective coordination of benefits provisions.

---

**13.** The "Health Benefits Continuation Plan Enrollment Form," signed and dated February 2, 1991, by P.L. Rabun, provides in pertinent part: "I understand that continuation coverage will terminate under several circumstances, including: the date I or a continued dependent become covered under another group health/dental plan which has no pre-existing condition exclusion affecting me/them...." (Exh. GP–3).

Georgia Power's coordination of benefits provisions state in pertinent part that "[w]here the Covered Person is a Child ... the benefits of a plan which cover the Child as a natural child of an employee shall be determined before the [Georgia Power plan]...." (Georgia Power Plan, § 4.5(c)(iv)(B).) Master Health's coordination of benefits provisions provide in pertinent part that

> if the specific terms of a court decree state that one of the parents is responsible for the health care expenses of the child, and the entity obligated to pay or provide the benefits of the Plan of that parent has actual knowledge of those terms, the benefits of that Plan are determined first. *This paragraph does not apply with respect to any Claim Determination Period or plan year during which any benefits are actually paid or provided before the entity has the actual knowledge.*

(*See* Exh. A to Georgia Power's First Request for Admissions, Art. X, B, 3(b)(3)) (emphasis added). Master Health incorrectly characterizes the respective coordination of benefits provisions as "mutually repugnant." Under either, as I interpret them, Master Health is the primary carrier.

Under Georgia Power's coordination of benefits provisions, the benefits of Larry Daniel's coverage with Master Health would be determined first since Master Health covers Plaintiff as the natural child of its employee. Master Health does not dispute that, but contends a contrary result is reached under its own coordination of benefits provision. Master Health asserts that "[i]t is undisputed that [Master Health] had no 'actual knowledge,' as required by the above passage [in its coordination of benefits proviso], of the divorce decree until the early part of August, 1991." (Master Health Br., April 12, 1993, at 49.) The above underscored portion of Master Health's coordination of benefits provisions does not except Master Health from its obligation as the primary insurer under the balance of the paragraph, however, because Master Health did not actually pay or provide any benefits before having actual knowledge of the divorce decree. Master Health admitted in its Responses to Georgia Power Company Medi-

cal Benefits Plan's First Request For Admissions that "prior to paying any benefits arising out of the Accident, [Master Health] had actual knowledge of a court decree, the specifics of which provide that Larry W. Daniel is responsible for the health care expenses of Carey Wayne Daniel." As Master Health conceded actual knowledge of the terms of the subject divorce decree *before* paying any benefits arising out of the accident, the above-quoted and underscored language is not implicated. Under Master Health's coordination of benefits provisions, it is the primary carrier. Based on the respective coordination of benefits provisions of the two plans, therefore, I find that Master Health is the primary insurer and Georgia Power is the secondary insurer.

### III. CONCLUSION

For the foregoing reasons Georgia Power Company Medical Benefits Plan's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART;** Master Health Plan Inc.'s Motion for Summary Judgment [14] is **GRANTED IN PART** and **DENIED IN PART;** and Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** as follows: based on the undisputed facts discussed above and for the foregoing reasons, I find and conclude, as a matter of law, that Carey Wayne Daniel was covered under the Georgia Power Company Medical Benefits Plan at the time of the accident and that Master Health Plan, Inc. is the primary insurer in this case.

There are no stipulations before the Court upon which the proper allocation of liability between the insurers for Plaintiff's total medical claims can be made. A trial of any remaining issues may be obviated by the Court's resolution of the foregoing, seemingly dispositive, issues. Accordingly, a settlement conference will be conducted on October 25, 1994, at the United States Courthouse at 985 Broad Street, Augusta, Georgia, Courtroom One, at 2:00 p.m.

---

14. *See* note 1, *supra.*