**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JASON HAYMOND, individually and
as a representative of the Estate of
Heather Haymond; ESTATE OF
HEATHER HAYMOND;
UNIVERSITY OF UTAH MEDICAL
CENTER; UNIVERSITY OF UTAH
OPTHAMOLOGY DEPARTMENT;
UNIVERSITY OF UTAH
DEPARTMENT OF NEUROLOGY,
SCHOOL OF MEDICINE;
UNIVERSITY OF UTAH SURGICAL
ASSOCIATES; UNIVERSITY
RADIOLOGY ASSOCIATES;
UNIVERSITY OF UTAH
DEPARTMENT OF
ANESTHESIOLOGY; U-U
PULMONARY DIVISION,
DEPARTMENT OF INTERNAL
MEDICINE; LOVE HOMECARE;
UTAH VALLEY REGIONAL
MEDICAL CENTER,

         Plaintiffs - Appellants,

v.

EIGHTH DISTRICT ELECTRICAL
BENEFIT FUND,

         Defendant - Appellee.

No. 01-4119
(D.C. No. 2:98-CV-892-ST)
(D. Utah)

---

**ORDER AND JUDGMENT** [*]

---

Before **EBEL** , **HOLLOWAY** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Jason Haymond challenges the district court's order entering summary judgment in favor of appellee Eighth District Electrical Fund ("the Fund") and dismissing his complaint with prejudice. Mr. Haymond argues that the district court erred by applying a one-year rather than a three-year limitations period to his claim. We agree and reverse and remand for further proceedings.

## I. Background

Jason and Heather Haymond were married on September 14, 1996. As of this date, Mrs. Haymond was covered by the Fund. Mrs. Haymond had suffered

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

from cystic fibrosis from the age of five, and received extensive treatment [1] for her condition between September 14, 1996 and September 13, 1997, the date of her death. Mr. Haymond alleges, however, that Mrs. Haymond did not receive treatment for the period of ninety days prior to their marriage. This is significant because the Fund's preexisting condition provision excludes only those conditions for which the participant received treatment during the ninety days prior to initiating coverage.

Nonetheless, the Fund denied benefits above $5,000, citing the preexisting condition exclusion. Mr. Haymond appealed the decision to the Board of Trustees, and on May 13, 1997, the Board sent a letter affirming the decision to deny benefits.

On December 15, 1998, Mr. Haymond brought the present action, alleging that he was entitled to recover benefits from the Fund under 29 U.S.C. § 1132(a)(1)(B). The Fund moved for summary judgment, arguing that the Summary Plan Description ("SPD") provides a one-year limitations period for such an action and that Mr. Haymond had failed to file within that time. The

---

[1] Treatment was provided by the various health care providers who are the other plaintiffs-appellants in this matter. As alleged assignees of Heather Haymond's right to recover benefits, the rights of the health care providers were deemed to be coextensive with the rights of Mrs. Haymond's estate. *See* Aplt. App. at 215. The parties stipulated to summary judgment against the health care providers on that basis. *See id.*

district court agreed, entering summary judgment for the Fund and dismissing Mr. Haymond's complaint with prejudice.

## II. Analysis

On appeal, Mr. Haymond argues that the district court erred in determining that the one-year limitations period applied. He points to the fact that the SPD also provides a three-year limitations period, arguing that there is an ambiguity regarding which period should apply, and that this ambiguity should be construed against the Fund as the drafter of the agreement. Mr. Haymond also points to the Fund's obligation under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, to clearly articulate any limitations on the recovery of benefits. In particular, Mr. Haymond cites 29 U.S.C. § 1022, which requires insurers to clearly state procedures for redress of denial of claims in the SPD.

We review the grant of summary judgment de novo, using the same standard applied by the district court. *United States v. Distefano*, 279 F.3d 1241, 1243 (10th Cir. 2002). Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Distefano*, 279 F.3d at 1243 (quotation omitted). In the ERISA context, as elsewhere, determination of the

applicable limitations period is a question of law reviewed de novo. *See, e.g.,*

*Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1290 (10th Cir. 1991).

The SPD contains two distinct limitations periods. The first appears in a

section entitled "Benefits Underwritten by PM Group Life Insurance Company."[2]

Within this section is a provision entitled "Legal Action," which states:

> No legal action can be started with respect to health claims under the
> group policy:
>
> 1. until 60 days after the required proof of loss has been sent to the
> PM Group; or
>
> 2. more than three years after the time proof of loss is required.

Aplt. App. at 72. This provision does not cross-reference any other portion of the

SPD. Mr. Haymond argues that this three-year statute of limitations should apply

to the instant action.

The SPD contains a later section entitled "ERISA - Information Required

by the Employee Retirement Income Security Act of 1974 (ERISA)." Within this

section is a provision entitled "Settlement of Disputed Claims," which states:

> Any dispute as to eligibility, type, amount or duration of benefit
> under the Plan . . . shall be resolved by the Board of Trustees . . . ,
> and the Board of Trustees shall have complete discretion to construe,
> interpret and apply all terms and provisions of the Restated Rules and
> Regulations and the Trust Agreement in resolving any dispute. The
> Board of Trustees' findings and determination of the dispute shall be

---

[2]    The first $100,000 of coverage was insured by the Fund itself; beyond that
amount, the Haymonds' policy was underwritten by PM Group.

final and binding upon all parties to the dispute. No action may be brought for benefits provided by the Plan or any amendment or modification thereof, or to enforce any right thereunder, until after the claim therefore has been submitted to and determined by the Board of Trustees or designated committee thereof, and thereafter the only action that may be brought is one to enforce the decision of the Board of Trustees . . . or to clarify the rights of the claimant under such decision. No such action may be brought at all unless brought within one year after the date of the decision of the Board of Trustees . . . .

Aplt. App. at 98-99. The Fund argues that this second provision, imposing a one-year limitations period, applies.

In concluding that the one-year limitations period applies, the district court relied primarily on the notion that the Fund was entitled to establish a contractual limitations period in the SPD that was different than Utah's statutory limitations period, citing *Moore v. Berg Enterprises, Inc.*, 3 F. Supp. 2d 1245 (D. Utah 1998). At this stage, the Fund's right to establish a contractual limitations period is not contested. What is in controversy is whether, in light of the apparent conflict between the above provisions, participants such as the Haymonds received adequate notice of the applicable limitations period. Accordingly, we must determine whether the two provisions cited above create an ambiguity, and if so, to what consequence. On this point, the district court determined that the two provisions were not inconsistent. It harmonized the provisions, concluding that "[t]he three-year total only comes into play if the administrative claim

-6-

process takes longer than two years, then the total three-year limitations rather than the additional one year applies." Aplt. Addendum at 9.

In analyzing ERISA plan documents, "standard tenets of contract construction" apply. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). Thus, "[a]mbiguity exists when a contract provision is 'reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of a term.'" *Id.* (quoting *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1290 (10th Cir. 2000), *cert. denied*, 531 U.S. 1077 (2001)).

In addition, the relative clarity of plan documents must be viewed against the special obligations that attach in the ERISA context. Section 1022(a) of ERISA requires that the summary plan description "shall be written in a manner clearly calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Section 1022(b) requires that certain information be included in the summary plan description, including "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," as well as "the remedies available under the plan for the redress of claims which are denied in whole or in part."

Stated another way:

The duty of clarity falls on the plan sponsor. As the Fifth Circuit cogently reasoned in *Hansen*:

Any burden of uncertainty created by careless or inaccurate drafting must be placed on those who do the drafting, and who are most able to bear that burden, and not the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask. And it is especially not a lot to ask in return for the protection of ERISA's preemption of state law causes of action–causes of action which threaten considerably greater liability than that allowed by ERISA.

*Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1518 (10th Cir. 1996) (quoting *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991)).

In light of the Fund's obligation to draft an SPD that is clear to participants, we conclude that the limitations provisions in the SPD are clouded by at least two ambiguities. First, there is a flat contradiction between the two provisions in that they apply different limitations periods (three years versus one year) triggered by different events (the filing of a proof of claim versus the Board of Trustees rendering a decision). The provisions appear in different sections of the SPD without cross-referencing one another, or providing any suggestion of how they might properly be read together.

The district court determined that it must harmonize the provisions, and concluded that "[t]he three-year total only comes into play if the administrative claim process takes longer than two years, then the total three-year limitations rather than the additional one year applies." Aplt. Addendum at 9. But this

approach places on the participant the burden of harmonizing apparently unrelated and conflicting provisions, thus contradicting ERISA's mandate that the SPD be clear to the layperson. *See* 29 U.S.C. § 1022.

As we explained in *Chiles*, "[a]n SPD is intended to be a document easily interpreted by a layman; an employee should not be required to adopt the skills of a lawyer and parse specific undefined words throughout the entire document to determine whether they are consistently used in the same context." 95 F.3d at 1517-18 (citing *McKnight v. S. Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985)). Similarly, here, participants should not be required to "harmonize" seemingly opposed provisions. There is simply no indication in the text of the SPD that these two provisions should be read together in the manner suggested by the district court.

Second, there is an ambiguity internal to the second provision. The final sentence states, "[n]o such action may be brought at all unless brought within one year after the date of the decision of the Board of Trustees." Aplt. App. at 99. But the referent of the phrase "[n]o such action" is unclear. The preceding paragraph refers to both an "action . . . brought for benefits" and an "action . . . brought . . . to enforce the decision of the Board of Trustees . . . or to clarify the rights of the claimant." *Id.*

-9-

Mr. Haymond contends the second provision should not apply to this action at all, because it purports to be limited to actions "to enforce the decision of the Board of Trustees . . . or to clarify the rights of the claimant under such decision," *id.*, and Mr. Haymond is bringing an action to recover benefits, as he is entitled to under Section 1132(a)(1)(B) of ERISA. The Fund responds as follows: "Assuming that the above-quoted language [of the second limitations provision] of the SPD implies that an action 'for benefits' is limited to an action to enforce the decision of the Board of Trustees, or to clarify the rights of the claimant, such implication is clearly erroneous as a matter of law, since ERISA expressly allows benefit recovery actions in addition to actions to enforce or clarify plan rights." Answer Br. at 10. The burden of clarity is on the Fund, and to the extent the second provision is limited to a much narrower cause of action than that pursued by Mr. Haymond, the consequence of inaccurate drafting falls squarely on the Fund. *See Chiles*, 95 F.3d at 1518.

The Fund also argues that the first limitations provision is inapplicable because it concerns the timetable for the Fund to submit claims to PM Group. The Fund points out that participants do not make claims directly to PM Group, and thus the three-year limitations period cannot apply to the Haymonds. The Fund cites the affidavit of a claims manager in support of this contention. But the notion that the first limitations provision is addressed to the Fund rather than

-10-

participants finds no support in the text of the SPD, where it must appear to be relevant to this inquiry. *See* 29 U.S.C. § 1022. To the contrary, the SPD uses "you" and "your" throughout the PM Group section to refer to the participant, not the Fund. [3] Further, the SPD as a whole is addressed to the participant. Nothing in the text suggests that the first provision is not addressing the participant.

In short, the provisions of the SPD are at best ambiguous regarding the applicable limitations period. Moreover, it is possible to read the second provision as being limited to a cause of action other than the type brought by Mr. Haymond. The Fund has failed in its duty to provide this critical information to participants in a clearly understandable manner. As the drafter of the SPD, the Fund must bear the consequences of this inaccuracy.

---

[3] *See* Aplt. App. at 67-73. For example, under "To Whom Benefits are Payable," the SPD refers to "loss of your life" and "the beneficiary you have designated." *Id.* at 72. These phrases clearly address the participant rather than the Fund. Under "Time of Notice" in the PM Group section the SPD states, "[y]ou must send written notice of a health claim . . . ." *Id.* at 71. Thus, the text of the SPD in the PM Group section addresses the participant and appears to a reasonable reader to outline the participant's obligations rather than the Fund's.

Accordingly, the judgment of the United States District Court for the District of Utah is REVERSED, and this matter is REMANDED for further proceedings consistent with this decision.

Entered for the Court


David M. Ebel
Circuit Judge